C. & G. K. ENNIS, EXECUTORS, v. A. BESTWICK AND ANOTHER.

1. Speculative purchasers of questionable titles, who evince an utter disregard of the rights of others, are entitled to but little favor in the courts.
2. The comments on champertous dealings made by this court in Clarke v. Koehler, 32 Texas, 684, are reiterated in the present case.

APPEAL from Fort Bend. Tried below before the Hon. L. Lindsay.

The opinion states the case.

*Gray & Botts*, for the appellants. It was not questioned in the court below, and we suppose will not be here, that plaintiffs in ejectment may recover on an equitable title, such as would be valid, and be enforced in a court of equity. If, however, it should be questioned, we assert that it has been held over and over again, that a plaintiff in ejectment, holding an equitable title, upon which he would be entitled in equity to demand the legal title, can maintain the action; and that the courts hold such a title as equivalent to a perfect title, because the law holds that which ought to be done in equity as valid as if it had been decreed and perfected. For this proposition we cite the following authorities. That the plea of "not guilty" brings in issue all equities for plaintiff or defendant:

Rivers v. Foote, 11 Texas, 670; Dailey v. Booth, 16 Texas, 565; Christy v. Scott, 14 Howard, U. S., 293; Mason v. Russell, 1 Texas, 796.

The action may be maintained on an equitable as well as a legal title.

Browning v. Estes, 3 Texas, 462; Neill v. Keese, 5 Texas, 30; Howard v. Perry, 7 id., 265; Miller v. Alexander, 8 id., 42; Martin v. Parker, 26 id., 267; Caldwell v. Fraim, 32 id., 327; Walker v. Howard, 34 id., 508; Harrington v. Williams, 31 id., 450; Ballard v. Perry, 28 id., 348; Stroud v. Springfield, id., 651.

The want of notice to Pettus and Parker, of the mistake, was the ground relied on in the court below, and on which the decision of the learned judge was rested. How there could have been any doubt on that point, is matter of surprise to us. The testimony of Parker himself, seems to us conclusive on that point. But before we discuss this evidence, we submit that the purchasers at that sale were not entitled to notice, because they only took such title as Herndon had, at the time of levy and sale. We insist on this, for several reasons. First, That the judgment of January 10, 1861, under which execution first issued in January, 1868, had acquired no lien on the property. It had never been registered, according to the provisions of the Act of February 14th, 1860 (Paschal's Digest, Article 3963), and without such registry, no lien attached, or was given, by law. Second, The judgment creditor had not used diligence to enforce his judgment, for seven years. He was not debarred from issuing execution, even by the Stay Law of 1861; because the judgment was in favor of a special commissioner, or trustee for an estate; and the Stay Law excepted that class of judgment debts from its operation, at least for the interest accruing on it. (Paschal's Digest, Articles 5125–5140.) Third, And, moreover, the judgment-creditor himself, Walter Andrus, who had been clerk of the County Court, had knowledge of the mortgage, and always understood that it covered these lots. This he testifies, and not only so, but also, that he would have bid for the lots one thousand to twelve hundred dollars, if he had not believed that the mortgage did include them; and strange to tell, Pettus and Parker both talked to him about it

before they bid, and learned the facts from him, before they went into the clerk's office and examined the record of a mortgage to Oliver Jones by Herndon ; and then exercised their astuteness and cunning, as learned lawyers, to decide that they would risk one hundred and seven dollars and fifty cents, and take chances of legal quibbling in court, and cheating the estate of Jones of the small security it had for a large debt.

In this view of the facts and law of lien, we confidently submit, that no lien existed in favor of the creditor by virtue of his judgment, and of course that no right could be acquired by him, or by the sheriff's sale, by which any priority of judgment lien could be vested in the purchaser. This being so, it is not necessary to decide, or insist, that no purchaser at a sheriff's sale acquires more than the title of the debtor, subject to all equities against him, for the purchaser in this case does not occupy the position of an ordinary purchaser without notice at sheriff's sale.

But if we are in error in this view, then we submit that this court has decided, in several cases, that a purchaser at a judicial sale only acquires such right, title, and interest, as the debtor had, and takes subject to all equities of which he had notice before sale. (Blankenship v. Douglas, 26 Texas, 225, and Obenchain v. Stroud, 33 Texas, 522.)

The doctrine was held in Rodgers v. Burchard, 34 Texas, 453, " that a purchaser at a judicial sale (as an execution, adminis- " trator's sale, etc.), takes only such interest as the debtor or " decedent actually had ; " and the court cites for it Dwight v. Newell, 3 Comstock, N. Y. R., 185 ; 4 Watts, 473 ; Baldwin v. Osterman, 6 Wall. U. S. 117, 119. The same doctrine has been enforced in a much more marked case, of a purchaser at sheriff's sale under judgment which was rendered long before the record of a mortgage to the debtor's wife, and of which no notice was given until the day before the sale by the sheriff, under execution. The mortgage was held to take precedence of the title acquired by the purchaser, at the judicial sale. We refer to the case of Price v. Price and Cole, 35 Texas, 461. Whatever dif-

ference of opinion there may be as to this doctrine in its full extent, there can be none as to its application to the circumstances of this case. And your Honors will find the doctrine supported by the following authorities, which we had occasion to examine some years since in a similar case :

Finch v. Earl of Winchelsea, 1 Peere Wms., 279 ; Burn v. Burn, 3 Vesey, Jr., 576 ; Saunders v. Dehew, 2 Vernon, 271 ; in matter of Howe, Paige, Ch. R., 125, 130 ; White v. Carpenter, 2 id., 262 ; Keirsted v. Avery, 4 id., 9 ; Foster v. Fouch, 2 Sergt. and R., 11 ; Hurst v. Hurst, 2 Wash. C. C. R., 69 ; Delane v. Keenan, 3 Dessausure, S. Ca., 74.

As to dormant judgments and purchasers charged with notice, see Sidney Johnson's Admr. v. Shaw, 33 Texas, 585 ; and that the creditor purchasing stands in the same position, Orme v. Roberts, 33 Texas, 768.

If, then, the purchaser at a sheriff's sale, with or without notice, only acquires such interest and title as the debtor had, it follows that Pettus stood in Herndon's shoes, and was liable to all claims and equities that existed against Herndon ; and there can be no question that, as against Herndon, the plaintiffs are entitled to recover the property and damages for its detention.

Did Parker, a bidder at the sale, with like knowledge with Pettus, who claimed the bid and sought to stand in his place, and paid a bonus of twenty-five dollars to do so, get any better title by his quit claim or transfer of interest ? We trow not. He was a volunteer conspirator seeking a speculation, and is liable to the losses as well as the expected profits in his copartnership with Pettus, who is dead, and out of the jurisdiction of the court. For this doctrine we cite Rogers v. Burchard, 34 Texas, 452, and the cases there cited ; and we add :

Brown v. Jackson, 3 Wheaton, 449 ; Blanchard v. Brooks, 12 Pick, 67 ; Miller v. Ewing, 6 Cushing, 34 ; Dykes v. Miller, 24 Texas, 425 ; 25 id., Suppt., 290 ; Hamilton v. Doolittle, 27 Illinois R., reported in 6 Am. Law Reg., N. S., 119 ; and May v. Leclaire, 11 Wallace, U. S., 217.

No brief for the appellees.

WALKER, J. It is unnecessary to notice the pleadings in this case. The parties deraigned title from a common source, John H. Herndon. The property in controversy is known as the "Veran- "dah Hotel property," in the town of Richmond. The plaintiff's title comes through the assignee in bankruptcy of Herndon. The property was sold subject to a mortgage given to Oliver Jones, in 1860. In this mortgage there is an omission to state the number of the block (119). The property is otherwise correctly described.

The defendant claims title through the sheriff of Fort Bend county, who sold the property on a judgment rendered subsequent to the execution and record of Jones's mortgage. The judgment was not registered in the clerk's office, and the evidence leaves it very questionable whether any execution was issued on this judgment, which was rendered on the 10th of January, 1861, until the 2d of January, 1868. The property was sold, however, on execution, and purchased by J. R. Pettus, on the first Tuesday in March, 1868. Pettus bid for the property one hundred and seven dollars and fifty cents. He afterwards quit-claimed the property to J. S. Parker for one hundred and thirty-two dollars and fifty cents, an advance of twenty-five dollars by Parker on Pettus's bid. Parker sold the property to J. C. Mitchell, *pendente lite*, for two hundred dollars. The property is proven to be worth about twelve hundred dollars.

Parker admits that he was present at the sale to Pettus. He says that it was reported before and at the sale, that there was a mortgage on the premises, and the evidence shows that both Parker and Pettus had examined the records, and found the mortgage to Jones recorded; but they depended upon the omission in the mortgage to number the block in which the lots were situated, and determined to risk a bid amounting to about one-twelfth the value of the property, upon this supposed legal defect in the mortgage. Considering that one or both of these gentlemen are lawyers, and that they purchased with full knowl-

edge of the existence of the mortgage, and further, that the deed from Parker to Mitchell is made since the commencement of the suit, and that the consideration for that deed is only about one-sixth part of the value of the property, and that Parker only attempted to transfer to Mitchell such title as he got from Pettus, this court will not regard with much favor their speculations made in utter disregard of the equitable rights of Jones, the mortgagee from Herndon.

Under such circumstances this mortgage must have been very defective indeed if any court would set it aside and give priority to a title obtained as was the defendant's title. Whether we have any law or not forbidding champerty in this State, there is a law of equity, resting upon the broad foundation of the moral law, which forbids all fraud, deceit, covin, falsehood, and misrepresentation ; and this court reiterates, as we feel called on to do, what was said in Clarke *v.* Koehler, 32 Texas, 684.

The judgment of the District Court will be reversed and reformed in such manner that the appellants recover the property in controversy, with damages against Parker and Mitchell, to be computed at the rate of twenty-five dollars per month, the ascertained rental value of the property, from the date of the appellant's purchase.

Reversed and rendered.