# Richmond.

## SAVAGE AND OTHERS V. BOWEN AND ANOTHER.

### February 2, 1905.

1. WILLS—*Who May Contest.*—The grantee of a sole heir at law may file a bill against the devisees under an alleged will of an ancestor to test the validity of the alleged will.

2. EVIDENCE—*Cross-Examination of Witness—Credibility.*—For the purpose of affecting her credibility, an attesting witness to a will may be asked, on cross-examination, if she had not united in a deed with her husband, who was sole heir of the testatrix, conveying the land devised by the will to a third person.

3. EVIDENCE—*Witness—Impeachment—Foundation.*—A witness may, in the discretion of the trial court, be recalled for the purpose of laying the foundation to contradict him, and witnesses may thereafter be introduced for that purpose. Much latitude of discretion is allowed trial courts in such matters, and their action will not be reversed except for palpable error.

4. EVIDENCE—*Experts—Discretion of Trial Court.*—Whether a witness is qualified to testify as an expert is largely a matter in the discretion of the trial court, and its ruling allowing a witness to testify will not be disturbed unless it clearly appears that he was not qualified.

5. EVIDENCE—*Handwriting—Experts—Bankers and Clerks.*—Bank officers and clerks of courts of long experience in examining and comparing signatures and writings, may, in the discretion of the trial court, give their opinions as to whether or not the body of a will, the signature thereto, and the name of one attesting witness, were written in the same ink as the name of the other attesting witness, and as to which was the older writing.

6. EVIDENCE—*Validity of a Will—Enhanced Value of Property Devised.*—Upon the trial of an issue *devisavit vel non*, where the sole issue is whether or not the controverted writing is the last will and testa-

ment of a testator, it is error to receive evidence tending to show the enhanced value of the land in controversy since its purchase from the heir of the testator. Such evidence is irrelevant and calculated to divert the minds of the jurors from the real issue.

7. WILLS—*Attesting Witness—Request of Testator—How and When Made.*—It is not necessary that the attesting witnesses to a will should have been expressly requested by the testator to act in that capacity. The request may be implied from the surrounding facts and circumstances. Neither is it necessary that the request to attest should have been made at any time prior to the act of attestation. It may have been made at the time the will was being subscribed, as well as before, or the testator may acquiesce in and ratify the act of attestation at the time it is done.

8. WILLS—*Attesting Witness—Request of Testator—Substantial Compliance With Statute.*—It is not necessary that at some time prior to signing, each of the attesting witnesses to a will should have known that the other was to be an attesting witness and had been requested to act in that capacity. In the matter of executing a will, the statutory requirements must be complied with, but substance must not be sacrificed to form, nor the end of the law to the means used for attaining it.

Appeal from a decree of the Circuit Court of Mecklenburg county, in a suit in chancery, wherein the appellees were the complainants, and the appellants were the defendants.

*Reversed.*

The opinion states the case.

*R. T. Thorpe, C. T. Baskervill* and *Reekes & Goode,* for the appellants.

*W. E. Holmes* and *E. P. Buford,* for the appellees.

HARRISON, J., delivered the opinion of the court.

Ann C. Savage, of Mecklenburg county, departed this life in July, 1883, leaving a will, whereby she devised her tract of land in that county to her grandchildren, who are the appel-

lants here. This will was dated the 7th day of June, 1883, and
is in the following words:

"In the name of God, Amen. After the Bowen debt be-
comes due and is settled, then I give to G. L. Savage's children
my tract of land on which he (Bowen) has a deed. It contains
sixty acres, more or less. I want Geog's children to have my
land and its benefits; this is my wish and will."

Then follows the signature of the testatrix and those of two
attesting witnesses—namely, N. C. Bugg and T. A. Savage.

On the 20th day of January, 1902, the will, upon the testi-
mony of the subscribing witnesses thereto, was admitted to pro-
bate in the County Court of Mecklenburg county.

In March, 1902, E. T. Bowen and B. E. Cogbill, adminis-
trators of George L. Savage, deceased, who are the appellees
here, filed their bill in the Circuit Court of Mecklenburg county,
in which they allege that Ann C. Savage died intestate, leaving
surviving her George L. Savage as her only child and heir at
law, and that upon her death the tract of land, mentioned in
the alleged will, descended to him as her sole heir at law and
next of kin; that, after the death of his mother, George L.
Savage and his wife had sold and conveyed the land to the com-
plainant Bowen, by deed with general warranty, dated Decem-
ber 4, 1890, and that he is now the owner of the same as will
appear from such deed duly executed, recorded, and filed with
the bill as a part thereof; and that the estate of George L.
Savage is interested in the matter of this alleged will by reason
of his general warranty in the said deed to the complainant
Bowen. They further allege that the paper in question, ad-
mitted to probate in the county of Mecklenburg, is not the true
last will and testament of Ann C. Savage, and that in view of
their interest in the land passing by such pretended will they
desire to impeach the same, and have it set aside. The grand-
children of Ann C. Savage, who are the children of George L.

Savage, deceased, are made parties defendant, and the prayer of the bill is that the alleged will may be declared null and void, and the complainants granted all the relief provided for under section 2544 of the Code, and such other, further, and general relief as the nature of their case may require.

The defendants demurred to and answered the bill, denying its material allegations, and insisting that the complainants had no interest in the estate of Ann C. Savage or the probate of her will, and further insisting that the controverted paper was the true last will and testament of Ann C. Savage.

The demurrer having been overruled, a jury was impanneled to try the following issue: "Whether any, and, if any, how much of what was offered for probate at the January term, 1902, of the County Court of Mecklenburg county, a copy of which marked '1' is filed with the plaintiffs' bill, is the last true will and testament of said Ann C. Savage." Upon this issue *devisavit vel non* the jury found for the contestants that the paper in question was not the true last will and testament of Ann C. Savage.

A motion to set aside the verdict was overruled, and the decree appealed from entered, adopting and approving the finding of the jury.

The demurrer was properly overruled. The allegations of the bill show such an interest in the subject matter as entitles the appellees to impeach the will. Controversies of this character usually arise between persons claiming as heirs at law on the one hand, and as devisees under the contested will on the other. George L. Savage, as heir of Ann C. Savage, would have had the right to impeach the will, and no reason is perceived why those claiming under and through him are not entitled to his rights in that respect.

The second assignment of error is that the court erred in admitting improper testimony.

Without referring in detail to the several bills of exceptions embracing these objections, we are of opinion that there was no error in proving by the witness, T. A. Savage, the deed from George L. Savage and wife to the complainant, E. T. Bowen, filed with the bill, and that the witness, T. A. Savage, had united with her husband, George L. Savage, in this deed conveying the land in question to Bowen. This evidence was admitted solely for the purpose of affecting the credibility of the witness, T. A. Savage, who was one of the attesting witnesses in the will; and the contestants had the right to ask any question which tended to test the accuracy, veracity or credibility of the witness. *Va., &c. Wheel Co.* v. *Chalkley*, 98 Va. 62, 34 S. E. 976.

We are further of opinion that there was no error in allowing the witness, A. W. Bracey, to be recalled for the purpose of laying the foundation to contradict him, and afterwards permitting the introduction of witnesses to contradict him. The examination of witnesses lies chiefly in the discretion of the trial court, and its exercise is rarely, if ever, to be controlled by an appellate court. Much latitude of discretion should be allowed the trial court in the matter of recalling witnesses, and its action will not be reversed except for palpable error. *Burke* v. *Shaver*, 92 Va. 345, 23 S. E. 749.

We are further of opinion that there was no error in admitting the testimony of the two bank officers and the clerk of the Circuit Court, as expert witnesses. These witnesses were introduced to state whether or not, in their opinion, the body of the will, the signature thereto, and the name of the attesting witness, N. C. Bugg, were written in the same ink as the name of the attesting witness, T. A. Savage, and which, in their opinion, was the older writing.

They testify to their long experience in handling and examining written papers, and in comparing signatures and writings.

It is the practice in this State to admit such evidence for the purpose mentioned. Indeed, with our courts located as they are for the most part in the country, no better evidence on the subject is attainable. It would be impossible, in most cases, to secure a chemist or manufacturer of ink, to say which of two writings was the older or written with the older ink. Whether a witness is qualified to testify as an expert is largely a matter in the discretion of the trial court, and its ruling allowing a witness to testify will not be disturbed unless it clearly appears that he was not qualified. *Richmond Locomotive Works* v. *Ford*, 94 Va. 627, 27 S. E. 509.

We are further of opinion that it was error to admit the evidence objected to tending to show the enhancement in the value of the land in controversy since its purchase by the complainant, Bowen. The sole issue before the jury was whether or not the controverted writing was the true last will and testament of Ann C. Savage. The value of the land could have no bearing upon that question, and the evidence tending to show its enhancement was irrelevant and calculated to divert the minds of the jury from the real issue.

The third assignment of error relates to the court's action with respect to the instructions.

The instructions given by the court, taken together, are predicated upon the view that it is essential to the due execution of a will that the attesting witnesses should have been requested by the testator to act in that capacity. They convey the impression, which appears to have been the view of the court, that the request must have been express, and that although every other statutory requisite may appear to have been complied with, the instrument will not be valid unless there shall also appear to have been an express request made by the testatrix to the witnesses to attest the same as and for

her last will and testament, and that each should know that the other had been so requested.

The requirements for the due execution of a will are found in section 2514 of the Code, and are as follows: "*No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence, and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly written by the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe to the will in the presence of the testator, but no form of attestation shall be necessary.*"

The purpose of the statutory requirements with respect to the execution of wills was to throw every safeguard deemed necessary around a testator while in the performance of this important act, and to prevent the probate of a fraudulent and supposititious will instead of the real one. To effectually accomplish this, the statute must be strictly followed. It is, however, quite as important that these statutory requirements should not be supplemented by the courts with others that might tend to increase the difficulty of the transaction to such an extent as to practically destroy the right of the uninformed layman to dispose of his property by will.

As said by Judge Moncure, in the case of *Parramore* v. *Taylor*, 11 Gratt. 220: "The law of wills should be plainly written, and no room should be left for doubt or implication. It is a law of almost universal application, and must often be acted on by unlearned persons in a situation which precludes the possibility of obtaining professional aid. The most important family settlements, which are often postponed to the last day or hour of life, may depend upon an observance of its requisitions. How important, then, that it should impose no

needless requisition; none that is not productive of some substantial good; and that it should plainly express what it means."

Prof. Minor, in his Institutes, says: "The statute is peremptory in requiring that the witnesses shall *subscribe their names,* in the presence of the testator, and at his request." 2 Minor (4th Ed.), p. 1017.

A casual glance at the statute shows that there is no peremptory requirement that the will shall be attested at the request of the testator; indeed the word "request" does not appear in the statute. If the learned author means that the plain implication from the language used is that the witnesses must be requested by the testator to attest the will, and it be true, as contended, that such request is necessary to the validity of a will, then the question arises, how is the fact that the request was made to be evidenced? We are of opinion that it may appear from the facts and circumstances surrounding the transaction, as well as by an express and formal announcement of the invitation.

In the case at bar it appears that T. A. Savage was the daughter-in-law of the testatrix, and that they lived together in the same house; that the will was executed in a small room 10x12 or 14 feet. It further appears that the will was written by T. A. Savage at the earnest request of the testatrix. This witness, who was not asked if she had been requested by the testatrix to witness the will, testifies that when N. C. Bugg, who had been sent for to witness the will, arrived, she handed the will to the testatrix, who raised up in her bed without assistance and signed the will in the presence of N. C. Bugg and herself; that after the testatrix had signed the will, Mr. Bugg signed his name as witness at the bed, and that she then took the will and went over to the bureau and signed her name under Mr. Bugg's at the bureau; that the testatrix signed and acknowledged the will in the presence of N. C. Bugg and her-

self; that N. C. Bugg signed his name thereto in the presence
of the testatrix and herself, and that she signed her name
thereto in the presence of the testatrix and N. C. Bugg; that
the testatrix, from the position occupied by her on the bed,
could have seen the witness sign her name to the will at the
bureau without changing her position and simply by looking;
that Mr. Bugg, from his position at the bed, could have seen
her sign her name by simply turning his head; that the tes-
tatrix was in clear and strong mind at the time, mentally as
sound as a dollar. The witness, N. C. Bugg, says that he was
sent for to witness the will; that when he arrived the testatrix
said to him, "Napoleon, I want you to witness my will. I want
to give what I have to George's children because I do not think
he will take care of it"; that he did not see the testatrix sign
the will, but that she acknowledged it as her will to him, in
the presence of Mrs. T. A. Savage; that the testatrix raised up
in bed, and her mind was clear and all right; that he went
around to the foot of the bed and signed the will; that he
signed it in the presence of Mrs. T. A. Savage and of the testa-
trix; that after he had signed it Mrs. T. A. Savage took the
paper and went with it to the bureau; that he could have seen
her if he had turned his head and looked, but that he did not
see her sign the paper; that the testatrix, from her position on
the bed, could have seen Mrs. T. A. Savage sign the paper
without change of her position, as the bureau sat in front of
the bed. This witness further states that he does not remem-
ber anything being said about Mrs. T. A. Savage witnessing
the will; that if anything was said about it he did not recollect
it; that he did not know T. A. Savage was to be a witness,
thought that Mr. Gregory was to be the other witness.

It is clear from the evidence that the testatrix knew that
two witnesses to the will were necessary, and she and the two
whose names are signed to the will were the only persons

present at the time of the transaction.  From this testimony, if true, the implication is plain that the witness, T. A. Savage, signed the will at the request of the testatrix, and the jury should have been instructed that if they believed the same, it constituted all the proof necessary to show that T. A. Savage had been requested by the testatrix to attest the will.

The fourth instruction goes a step further and tells the jury that it is necessary for them to believe from the evidence that the testatrix had authorized or requested T. A. Savage to subscribe her name to the paper as an attesting witness before she attested the same.

The vice in this instruction, in addition to the inference that an express request was necessary, is the proposition that such request must have been made at some time prior to the act of attesting the will.  This position is not tenable.  The request might have been made at the time the will was being subscribed as well as before; or the testatrix might have acquiesced in and ratified the act of attestation at the time it was done.  In this case the witness, T. A. Savage, wrote the will at the urgent request of the testatrix, and signed it as a witness in the plain view and conscious presence of the testatrix, without objection on her part, and yet the jury are told that though they believe these facts, they must find against the validity of the will.

In addition to the general objection pointed out, the sixth instruction is erroneous because it, in effect, tells the jury that at some time prior to the signing, each of the witnesses must have known that the other was to be an attesting witness, and each must also have known that the other had been requested to act in that capacity.  This instruction imposes unnecessary requirements, not called for or suggested by the statute, which would be likely to defeat the probate of many otherwise valid wills.  The witness, T. A. Savage, who wrote the will, may have been asked to attest it before N. O. Bugg came to the house,

Opinion.

and, unless the request was repeated in his presence after his arrival and at some time prior to the act of signing, the jury could not, under this instruction, find in favor of the validity of the will.

As said by Judge Moncure, in *Parramore* v. *Taylor, supra:* "Nothing is more common or natural than for a scrivener to subscribe a will as a witness before his fellow witness is called in to join him in the attestation; or for a witness called on to attest a will, after doing so, to turn his back and walk off without noticing what is done by others afterwards."

In the matter of executing a will, the statutory requirements must be complied with, but substance must not be sacrificed to form, and the end of the law to the means used for attaining it.

For these reasons the decree appealed from must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial of the issue *devisavit vel non,* in accordance with the views herein expressed.

*Reversed.*