[No. 10071.  Department Two.  October 5, 1912.]

*In the Matter of the Estate of* DOROTHY DRURY SIEBS.
GEORGE W. DRURY, *Appellant,* v. JENNIE D. MOULTON *et al.,*
*Respondents.*[1]

WILLS—CONTEST—"PERSONS INTERESTED." Where the testatrix's father, who would have inherited the estate if no will had been made, was so far insane as to be incapable of managing his own affairs until his own death, his son as his heir may maintain a contest of the will, being a "person interested" in the will, within the meaning of the statute respecting a will contest.

WILLS—MENTAL CAPACITY—EVIDENCE—SUFFICIENCY.  A testatrix is not shown to have sufficient capacity to execute a will ten days before she was declared insane, where prior to the execution, she had shown grave symptoms of the affliction, from the first she declined more or less rapidly, and ten days after the will was executed she was found unsafe to be at large, and was confined and finally died from the effects of her infirmity.

LIMITATION OF ACTIONS—DISABILITIES—MENTAL CAPACITY — EVIDENCE—SUFFICIENCY—WILLS—CONTEST.  There is no sufficient evidence of insanity or incapability of understanding one's legal right so as to toll the statute of limitations, respecting the institution of a will contest, where it merely appears that a man, seventy years of age, retired from active business after meeting with an accident affecting one of his legs, which, with his corpulence, prevented his walking or getting around, and that he believed in spiritualism, and manifested deeply-felt religion by Bible reading, prayer, and singing; while other evidence showed that he retained control of his affairs and had no infirmity of mind.

DESCENT AND DISTRIBUTION — HEIRS—PRESUMPTION — DEATH AND DIVORCE—WILLS—CONTEST—BURDEN OF PROVING HEIRSHIP.  Where a testatrix, dying without issue, had separated from her husband

[1]Reported in 126 Pac. 912.

three years before her death, her next of kin, in order to contest the will, must show that the husband was dead or divorced at the time of her death; there being no presumption from the lapse of such period of time.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered May 19, 1911, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to set aside a will. Affirmed.

*Albert E. Joab* and *Charles Bedford* (*Kappler & Merillat*, of counsel), for appellant.

*T. W. Hammond*, for respondents.

PER CURIAM.—On April 30, 1902, Dorothy Drury Siebs died in Pierce county, state of Washington, leaving an estate therein consisting wholly of personal property. She left a will in which she bequeathed the property to her sister, Jennie Drury Moulton, appointing her sister sole executrix of the will, and providing therein that the executrix should be permitted to act as such without bonds, and without the intervention of the courts further than to admit the will to probate. The will was duly probated on May 5, 1902, and Mrs. Moulton confirmed as executrix thereof. She at once assumed the duties of her office, administered the estate according to the terms of the will, and thereafter filed her final report as such executrix. Her report was approved, and her discharge entered by order of the court on May 30, 1903. The will of Mrs. Siebs was executed on July 25, 1899. Ten days thereafter, she was adjudged insane, on the complaint of Clarence E. Moulton, husband of Jennie Drury Moulton, the beneficiary of the will. She was committed to the care of Clarence E. Moulton, and by him placed in a private sanitarium, where an effort was made to effect her cure. Her affliction was diagnosed as a form of paresis, and her condition, after improving for a short time, rapidly became worse, until she became hopelessly insane some fifteen months after

her commitment. She was then taken from the sanitarium and placed in the Western Washington Hospital for the Insane, where she died from the effects of her infirmity, on the date above given.

The immediate relatives of Mrs. Siebs were the sister who was named as the beneficiary of the will, her brother, George W. Drury, who resided in the city of Washington, and her father, William C. Drury, who also resided at the city of Washington. Her father, at the time of her death, was approaching his sixty-fifth year, and died at his home in Washington on May 28, 1908, some six years after the death of his daughter. The record also speaks of the husband of Mrs. Siebs. While the pleadings are silent concerning him, the evidence shows that she was living with him at Bridgport, Connecticut, as late as the early months of the year 1899; that she separated from him after that time, coming west with her sister, to whom she had written for aid in the latter part of May of that year. The record is silent as to his further existence, and neither party seems to have thought his existence a matter of any consequence.

The present proceeding, to revoke and set aside the will, was begun by George W. Drury on March 31, 1909, some seven years after the will had been admitted to probate, and some ten months after the death of his father, William C. Drury. The will is attacked on the ground that Mrs. Siebs was incompetent to make a will at the time it was executed, being then of unsound mind. The seeming bar of the statute of limitations is sought to be escaped by the allegation that the contestant's father was the sole heir at law of Mrs. Siebs, that the father was insane and incapable of managing his own affairs from a time before the death of Mrs. Siebs until his own death, and that the petitioner was one of the heirs at law of his father, and hence was entitled to institute a contest of the will as soon as he became entitled to share in his father's estate. On their appearance, in response to the citation served upon them after the filing of the contestant's pe-

tition, the respondents first contended that the contestant had not shown sufficient interest in the will to enable him to maintain a contest thereof; which contention being overruled, they answered to the merits, putting in issue the allegations of insanity with reference to both Mrs. Siebs and William C. Drury. On the issues thus framed, the trial judge determined the facts in favor of the sanity of both parties, and dismissed the proceedings. The contestant appealed.

The respondents urge in this court the want of sufficient interest in the will in the appellant to enable him to maintain a contest thereof. They contend that a "person interested in any will," within the meaning of that phrase as it is used in the statute, must be a person who would himself, but for the will, have inherited the property devised and bequeathed thereby, and that the contestant is not such a person. But without specially reviewing the reasons advanced to support the contention, we think it is not well founded. If it be true that William C. Drury would have inherited the property of Mrs. Siebs but for the will, and if it be true, further, that he was so far insane as to be incapable of managing his own affairs from a time preceding the death of Mrs. Siebs until his own death thereafter, then his heirs at law have, we think, such an interest in the will of Mrs. Siebs as to enable them to maintain a contest thereof. We have found few cases directly in point, but the following may be consulted as bearing more or less strongly on the question: *Savage v. Bowen*, 103 Va. 540, 49 S. E. 668; *Brady v. McCosker*, 1 Comstock (1 N. Y.) 214; *Van Alen v. Hewins*, 5 Hun 44; *Burnett v. Milnes*, 148 Ind. 230, 46 N. E. 464; *In re Langevin*, 45 Minn. 429, 47 N. W. 1133.

On the merits of the controversy, the evidence makes it clear that Mrs. Seibs had shown grave symptoms of the affliction which finally destroyed her life, for a considerable period of time preceding the day on which she executed the will; and notwithstanding she went about its execution as a rational person usually goes about such an undertaking, the

evidence raises in our minds grave doubts whether she was sufficiently sane on that day to comprehend fully the consequence of her acts. At certain times she appeared to have greater mental capacity than she exhibited at others, but from the time the symptoms of the disease were first observed upon her, she declined more or less rapidly, and we think it is too much to say that she was competent to execute a will only ten days prior to the time it was found unsafe to permit her to go longer without restraint.

As to William C. Drury, however, we find no sufficient evidence in the record to warrant a conclusion that he was insane, or so far demented as to warrant the conclusion that he was incapable of understanding his legal rights or of managing his own affairs, either at the time of Mrs. Siebs' death or between that time and the time of his own death. Great stress is laid on the fact that he ceased active business some time prior to the death of Mrs. Siebs, and thereafter secluded himself closely in his own home, living the life of a recluse. But the record shows a reason for his conduct. He was approaching his seventieth year, had met with an accident which affected one of his legs, and had become very corpulent during the later years of his life, all of which greatly interfered with his ability to get around. Indeed, one of the contestant's own witnesses testified to the difficulty he had in walking but a short time before he retired from active business, saying that it took him more than a half an hour to travel a distance which would require an active person but two or three minutes.

It was shown also that, for a time at least, Mr. Drury attended spiritualistic gatherings, and seemingly had faith in the doctrine of spiritualism; that he believed in the materialization of spirits, and apparently other spiritualistic phenomena, and sometimes spoke of having communed with his deceased wife. But it is not necessarily an evidence of insanity to believe in spiritualism. The great majority of civilized human beings believe in a life beyond the grave.

Based upon that belief, many widely different religious creeds have been established, and the fact that an individual may believe in one of these and discard others is not evidence of unsoundness of mind, even though the creed selected may be the less common belief and, to the majority of mankind, less capable of being defended than some that are more common. No one belief has a monopoly of men of intellectuality. It is well known that many of the clearest and brightest intellects have firmly believed in the doctrine of spiritualism, and in the reality of spirit manifestations that ordinarily accompany the practice of its teachings. But it is said that Mr. Drury, while alone in his room, would read from the Bible in a loud tone of voice, would engage somewhat vociferously in prayer, and would sing hymns whose wordings were not altogether congruous, to tunes not found in the hymnal. But this was nothing more than the manifestation of a deeply-felt religion. Mr. Drury was fast approaching the end of the span allotted to the life of man. It is to be supposed that his faculties had become somewhat dimmed, that his memory would not at all times recall the words of songs as they were written, and that his voice had lost some of the freshness of youth. But this is not insanity. It indicates merely a slowing up of the mental powers that uniformly comes with the declining years of man and foretells his final dissolution.

On the other side, there is abundant evidence that Mr. Drury maintained his sanity to the last. It was shown that, notwithstanding he quit active business some time before his death, he never lost control of his affairs; that while the actual work of looking after his affairs was performed by agents, yet those agents were under his direct supervision, and no change of even minor importance was made without his sanction and approval. He was told of his daughter's death and of the contents of her will, both by letter and orally, shortly after the death occurred, and expressed his approval of the manner in which the daughter disposed of her property. His death was the result of diseases of the body and not of

IN RE SIEBS' ESTATE.·

the mind. If the diagnosis be correct, the immediate cause of his death was "senile gangrene of the left foot," a disease in no way connected with an infirmity of the mind. But it is needless to pursue the inquiry. There is, in our judgment, no cause for believing Mr. Drury insane at any time between the death of his daughter and his own death.

The conclusions we have reached on the case as it is presented to us calls for an affirmance of the judgment of the court below. There is, however, another matter connected with the record, not dwelt upon by counsel for either side, that seems to us equally fatal to the contestant's case. Elsewhere we have mentioned the fact that the record shows that Mrs. Seibs was a married woman at a time some six months prior to the date she was adjudged insane, and that it is silent as to any other fact concerning her husband. If the husband was alive and undivorced at the time of Mrs. Siebs' death, he, and not William C. Drury, was the sole heir of her estate. Rem. & Bal. Code, § 1364. There can be no presumption from the short time that elapsed between the separation and his wife's death that he was either dead or divorced, and it was incumbent upon the appellant to show one or the other of these facts in order to have a standing as a contestant of his sister's will. Not having so shown, it follows that the judgment would have to be affirmed, even were we to decide the questions actually presented in the appellant's favor.

The judgment is affirmed.