**McCARTHY v. TEXAS CO. et al. (No. 9660.)\***

(Court of Civil Appeals of Texas. Fort Worth. June 25, 1921. Rehearing Denied Oct. 15, 1921.)

1. **Appeal and error ⟷725(2)—Assignments held sufficient to test sufficiency of complaint.**

An assignment that the court erred in sustaining and not overruling the general demurrer of the defendants to the plaintiff's third amended original petition filed in said cause was ·sufficient for review of the complaint.

2. **Executors and administrators ⟷20(10)— Purchaser from heirs held "person interested," entitling him to maintain certiorari to review appointment.**

A purchaser of an interest in the lands of a decedent from his heirs is a person interested in the estate entitled to bring certiorari, within Vernon's Sayles' Ann. Civ. St. 1914, art. 733, and the statute was not to be construed .as applying only to parties to the proceedings.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Any.]

3. **Husband and wife ⟷276(1)—Order appointing community administrator held valid against collateral attack.**

Probate court having general jurisdiction of the subject-matter in appointing a community administrator, the fact that there might be no community debts, even if jurisdictional, did not render the order invalid as against collateral attack.

4. **Husband and wife ⟷276(1)—Proceeding to set aside order appointing community administratrix held a direct attack.**

A proceeding to revise or set aside the order appointing widow of a decedent as his community· administratrix, alleging that it had been improvidently entered, and that there were no community debts necessitating administration, was a direct, and not a collateral, attack on the appointment.

5. **Husband and wife ⟷276(1)—Existence of children the dominant reason for community administration.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3592–3614, the dominant reason for administration of community property was to enable the survivor to protect the interests of children; and nonexistence of community debts, debts not being made a requisite of the application, should not defeat it.

6. **Husband and wife ⟷276(1)—"Child" warranting community administration must be minor.**

Under Vernon's Sayles' Ann. St. 1914, arts. 3592–3614, making the survivorship of a child the dominant reason for appointment of community administrator, such child must be a minor. In its widest sense, by child or children is meant an offspring of either sex and of any age, and these terms are generally so considered in statutes of descent and distribution, and when used in devising property by will. Nevertheless a very general, and perhaps the most frequent, interpretation of the term "child" is that such a one is a young person of any age less than maturity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Child— Children.]

7. **Husband and wife ⟷276(1)—Appointment of wife as community administratrix held improvident after appointment of general administrator.**

Where the surviving wife had consented to and joined in a petition for the appointment of an adult son as general. administrator, it was improvident to subseqeuntly grant her an appointment as community administratrix; the law not contemplating two independent administrations at the same time.

8. **Executors and administrators ⟷29(2)— Attack on appointment held collateral.**

Where plaintiff brought proceedings to revise or set aside an order appointing a surviving widow as community administratrix, contention by the defendants therein, claimants under the heirs, that the fact relied on by plaintiff as invalidating the appointment of the community administratrix also showed the invalidity of general administration granted on application of an adult son was collateral.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

In the matter of the estate of A. Hise, deceased. Application by Henry M. McCarthy against the Texas Company and others for certiorari to review the appointment of M. A. Hise as community administratrix. From an order ·sustaining a demurrer to the petition, applicant appeals. Reversed and remanded.

Etheridge, McCormick & Bromberg, of Dallas, and Conner & McRae, of Eastland, for appellant.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellees.

CONNER, C. J. In this case the court sustained the appellees' general demurrer to the petition of appellant for certiorari to the county court, and, appellant having declined to amend, the suit was dismissed, and this appeal is from the judgment of dismissal. The application for the writ of certiorari was filed in the district court by appellant on November 3, 1919. The court, by order indorsed on the petition, directed the clerk upon the filing and approval of a bond in the sum of $500, to issue the writ as prayed for. Appellees, having been cited, appeared, and, among other things, urged the general demurrer to the petition which, as stated, was sustained, and we are now called upon by appellant's assignment of error to determine the sufficiency of the petition.

Appellant alleged, in substance, that one A. Hise and his wife, M. A. Hise, were the community owners of a certain tract of land

described in the petition; that on January 8, 1914, A. Hise died intestate, leaving his surviving widow, M. A. Hise, and seven named children; that at the time of the death of A. Hise there existed no community debts, and that each of the seven children named had attained their majority; that nevertheless one of said children, R. L. Hise, at the instance of his mother, M. A. Hise, and all of the heirs of A. Hise, on January 16, 1914, applied to the county court for letters of temporary administration, which were granted on the same day; that on March 23, 1914, R. L. Hise was by order of the county court continued as temporary administrator until the next term, which was the January term, 1915, when he applied for and on January 15, 1915, was granted letters of permanent administration on said estate, and thereafter duly qualified; that on January 26th following, together with appraisers, he appraised the land in controversy at $3,500, and personal property of the value of $290, which inventory and appraisement was approved, and the administrator's bond fixed at $11,- 580; that oath and bond of R. L. Hise as permanent administrator was made and approved by the court. It was alleged, in substance, that the application for administration by R. L. Hise recited that it was made because his mother, M. A. Hise, was old and infirm and unable to qualify as administratrix, and that the applicant had been selected as the proper person to make the application.

The petition further alleged that, notwithstanding the proceeding stated, and while the administration was yet pending, said M. A. Hise, on November 28, 1917, filed in said county court her petition to qualify as community survivor of the estate of herself and her deceased husband, A. Hise, which petition disclosed affirmatively that each of the seven surviving children of A. Hise, deceased, had attained his or her majority, and contained no averment of any indebtedness whatever of said A. Hise, deceased, or of any charges or claims against said estate, nor the averment of any fact showing any necessity for community administration.

It was further alleged as a matter of fact that there did not then exist any indebtedness against or necessity whatever for administration, community or otherwise, upon said estate; that the court was without jurisdiction to entertain the petition of said M. A. Hise for the following reasons:

"(1) No indebtedness existed; (2) The petition affirmatively disclosed that the children were of age and under no disability; (3) no necessity was alleged or existed for any administration on said estate; (4) said M. A. Hise had previously relinquished her right to administer said appointment as administrator, which relinquishment was and is irrevocable; (5) permanent administraton was then pending in said court under its former orders ap-pointing and qualifying said R. L. Hise, and said court had therefore exhausted its jurisdiction and neither then nor thereafter had any jurisdiction to appoint the said M. A. Hise as community or other administratrix of the estate of A. Hise, deceased, or of the community estate of said A. Hise, deceased, and M. A. Hise; and (6) that the record of the court affirmatively showed that no debts existed against said estate, that the children of A. Hise were all living and over 21 years of age, and that no necessity whatever for administration existed."

It was further alleged that thereafter, on November 28, 1917, said court, although wholly without jurisdiction, did, by order of said date grant said application; that said order was improvidently made and is totally and wholly void, for the reasons above alleged, and because on and prior to November 28, 1917, the community estate had descended and vested in the said M. A. Hise and said children.

The petition further alleged that on the same day, to wit, November 28, 1917, M. A. Hise filed an inventory, showing the appraisement of the lands in controversy at $3,000, which appraisement and inventory was approved by the county court on the next day, whereupon M. A. Hise made oath and gave bond as required by order of the court, which was duly approved; that thereafter, on November 30, 1917, and on November 25, 1918, M. A. Hise executed certain mineral leases upon the lands in controversy, by virtue of which the defendants in the case were claiming. The plaintiff alleged title in himself to an undivided one-half interest in all and singular the mineral rights in the lands in controversy under a legal chain of mesne conveyances by, from, through and under said children and heirs at law of said A. Hise.

The petition is quite lengthy, and we have only set out the substance of such parts of it as we deem necessary to an understanding of our conclusions.

[1] Appellees object, for various reasons, to appellant's assignments and propositions. One of the assignments, however, is as follows:

"The court erred in sustaining and not overruling the general demurrer of the defendants States Oil Corporation and Prairie Oil & Gas Company to the plaintiff's third amended original petition, filed in said cause on the 28th day of September, 1920."

We think this assignment sufficient to raise the questions discussed, particularly in view of the ruling in the case of First State Bank v. McGaughey, 38 Tex. Civ. App. 495, 86 S. W. 55, to the effect that it is fundamental error apparent on the face of the record to dismiss a suit on a general demurrer where the petition states a good cause of action, and that such error will be reviewed even in the absence of an assignment of error.

We therefore will address ourselves to the questions involved, without discussion of the sufficiency of appellant's assignments and propositions to comply with the rules.

[2] Appellees, among other things, seek to sustain the ruling of the court on the ground that appellant as a purchaser of an interest in the lands of A. Hise, deceased, from his heirs is not a person interested in the estate of A. Hise within the purview of article 733, V. S. Tex. Civ. Statutes, relating to the subject of certiorari. This article reads:

"Any person interested in the estate of a decedent or ward may have the proceedings of the county court therein revised and corrected at any time within two years after such proceedings were had, and not afterward; provided, that persons non compos mentis, infants and femes covert shall have two years after the removal of their respective disabilities within which to apply for such revision and correction."

Appellees' contention is to the effect that a review of the probate proceedings in the county court by certiorari is but another method of appeal, and that only parties to the proceeding in the county court may appeal from one of its orders, citing Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; Ferris v. Streeper, 59 Tex. 312; Clarke v. Koehler, 32 Tex. 680; Ennis v. Bestwick, 37 Tex. 662; Tex. Land & Invest. Co. v. Kennedy, 123 S. W. 150; Storrs v. St. Luke's Hospital, 180 Ill. 368, 54 N. E. 185, 72 Am. St. Rep. 211. All of the cases cited, however, except the last, were cases of ordinary appeal, wherein, for reasons stated in those authorities it was held that parties to the record only were entitled to prosecute an appeal. The case of Storrs v. St. Luke's Hospital, supra, however, would seem to sustain appellees' contention, but we think this case is not in harmony with opinions from other jurisdictions, nor in harmony with the spirit of the article of the statutes quoted. Under our statutes of descent and distribution (article 3235, V. S. Tex. Civ. Statutes), upon the death of A. Hise his estate at once vested in his heirs, subject only to the payment of community debts and a lawful administration. Belt v. Cetti, 100 Tex. 92, 93 S. W. 1000. The terms of article 733 are very broad. It declares that "any person interested in the estate of a decedent" may have the proceedings of the county court revised or corrected at any time within two years after such proceedings were had. As appellant acquired the right of the heirs of A. Hise by due conveyance, as he alleged, it would certainly seem to be that he is interested in that estate, and there is nothing in the petition which shows that he is a mere intermeddler, or that the transaction in which he secured the rights assigned to him was champertous, which latter ground was assigned as one of the reasons why none but a party to the record could appeal in a number of the cases cited in behalf of the appellees. If, as the statute declares, upon the death of A. Hise his estate descended to his heirs, subject alone to the payment of debts and to lawful administration, it must certainly be held that they had the power of alienation and should be accorded the power to transmit to the purchaser all lawful and necessary privileges to recover, protect, or preserve the estate alienated. To hold otherwise would be to lessen the value of the heirs' estate and operate as an obstruction to its free alienation and to depreciate the value of the same, and we think the following authorities sustain appellees' right to prosecute this proceeding: In re Thompson's Will, 178 N. C. 540, 101 S. E. 107; Ingersoll v. Gourley, 72 Wash. 462, 130 Pac. 743; Savage v. Bowen, 103 Va. 540, 49 S. E. 668; Davies v. Leete, 111 Ky. 659, 64 S. W. 441; Brooks v. Paine's Ex'rs, 123 Ky. 271, 90 S. W. 600; Mullins v. Fidelity & Deposit Co., 100 S. W. 256; Foster v. Jordan, 130 Ky. 445, 113 S. W. 490; Elmore v. Stevens, 174 Ala. 228, 57 South. 457; Griffin v. Milligan, 177 Ala. 57, 58 South. 257; Komorowski v. Jackowski, 164 Wis. 254, 159 N. W. 912; Reynolds v. Prestidge, 228 S. W. 358.

The foregoing conclusion, however, but brings us to the vital question in the case, which is whether under the circumstances alleged the county court properly granted to the surviving wife, Mrs. M. A. Hise, the powers of a community administratrix. In the determination of the question, we quote the following article of the statutes:

"Article 3280: "No administration upon any estate shall be granted, unless it be made to appear to the satisfaction of the court that there exists a necessity therefor, such necessity to be determined by the court hearing the application."

Under the terms of article 3595, the surviving husband or wife, as the case may be, may be appointed administrator of the community estate of such husband or wife at any time within four years after the death of either "when there is a child or children" by filing a written application in the county court of the proper county. It is required: First, that the application shall state the fact of the death of the deceased and the time and place of the same; second, that he or she left a "child or children, giving names, sex, residence, and age of each child"; third, that there is a community estate between the deceased and himself or herself; fourth, such facts as show the jurisdiction of the court over the estate; fifth, asking for the appointment of appraisers, to appraise such estate.

Following articles of the statutes (articles 3596–3599) further provide that upon the filing of such application the county judge shall,

without citation, and either in term time or vacation, by an order entered upon the minutes of the court, appoint appraisers to appraise such estate "as in other administrations." Whereupon it becomes the duty of the surviving husband or wife, with the assistance of any two of the appraisers to make out a full, fair and complete inventory and appraisement of such community estate, and the "survivor shall attach thereto a list of all community debts due the estate and shall also attach thereto a list of all indebtedness due by said community estate to other parties, giving the amount of each debt and the name of the party or parties to whom it is due, and his or their post office address," which inventory and list shall be sworn to by the survivor and the appraisers and returned to the court in due time. The survivor is thereupon required to give a bond, to be approved by the county judge, in the sum equal to the whole of the value of such community estate as shown by the appraisement, conditioned that he will faithfully administer such community estate and pay over one-half the surplus thereof "after the payments of the debts with which the whole of such property is properly chargeable," to such person or persons as shall be entitled to receive the same. When these proceedings have been complied with and the inventory, appraisement, list of claims, and bond are returned to the county judge and he has approved them, he is required to make an order to that effect, which order shall also authorize such survivor to control, manage, and dispose of such community property in accordance with the provisions of the chapter. The next article (3600) reads:

"When the order mentioned in the preceding article has been entered, such survivor, without any further action in the county court, shall have the right to control, manage and dispose of such community property, real or personal, in such manner as may seem best for the interest of the estate and of suing and being sued with regard to the same, in the same manner as during the lifetime of the deceased; and a certified copy of the order of the court mentioned in the preceding article shall be evidence of the qualification and right of such survivor."

The powers conferred upon the community administrator by the article just quoted have been likened to the power of a surviving partner, and expressions in other opinions perhaps tend to the conclusion that the proceedings under chapter 29 are not to be classed as an "administration," or the qualifying survivor as an "administrator," but rather as a special provision in aid of a community survivor. But we think the Legislature in enacting the provisions of chapter 29 meant something more than this. A surviving partner's power to sell partnership property exists only when there are partnership debts, and cases when those debts are paid. But it is not so in the case of a community administrator, as the decisions will exemplify. He yet may, under the terms of the statutes, dispose of the property when in his judgment it is to the best interest of the estate to do so. Nor can we think that by the inclusion of chapter 29, regulating the estates of decedents, it was meant to confer a special privilege, or an arbitrary power upon the community survivor without necessity or reason, and thus interrupt the operation of the general laws of descent and distribution.

The subject of probating wills, the appointment of executors, administrators, and other proceedings affecting estates of decedents, is treated in our statutes under one general title (title 52) which is divided into 32 chapters. Chapter 6 and a number of succeeding chapters regulating the appointment of executors and administrators generally, prescribes the circumstances under which they may be made and the powers and duties of the same, etc. It will be seen, however, by reference to title 29, Revised Statutes, that it is devoted to the "administration of community property." The first article of this chapter (article 3592) declares that the community property shall be liable for community debts, and makes it the duty of the survivor, executor, and administrator to keep a separate and distinct account of all community debts paid, etc. The next article declares that when there is neither child nor children, and no separate property, "no administration" shall be necessary. Article 3595 is entitled "Application for Community Administration," and prescribes the requisites of the application as we have hereinbefore stated them. Throughout the succeeding articles of the chapter the references are to the "community" property, "community" debts, etc., and it seems evident that our lawmakers not only designated, but intended, the control of the survivor, under chapter 29, as a species of "administration," and classes the qualifying survivor as an "administrator," prescribing duties essentially pertinent to such office.

[3-6] Appellees insist that the jurisdiction of the county court to entertain an application for the appointment of the appraisers and to appoint a community administrator and to authorize such administrator to control, manage, and dispose of the community property is not dependent upon the existence of the community debts, citing such cases as Dawson v. Holt, 44 Tex. 174. But the question was determined in that case under different statutes from those now under consideration, and in a collateral attack. So, too, does it appear in most, if not all, of the other cases cited by appellees in support of their contention. We need not, however, in this case, go so far as to say that the order under consideration is void for the want of

jurisdiction. The probate court had general jurisdiction of the subject-matter; and, even though it should be held that the existence of community debts was jurisdictional, yet the nonexistence of such debts, not appearing on the face of the order, places such order in a secure position against a collateral attack. But in the case before us the attack is not collateral, but, on the contrary, direct. It is a proceeding to "revise" or set aside the order appointing M. A. Hise as community administratrix, alleging that it had been improvidently entered, and alleging as one of the grounds therefor that there were no community debts necessitating the administration. That the Legislature had in mind the payment of community debts as one of the reasons for a community administration seems plain to us on consideration of all of the articles of chapter 29. At the risk of being deemed tautological, we again observe that in the first article of the chapter it is provided that in the settlement of community estates it shall be the duty of the administrator to keep a "separate and distinct account of all the community debts allowed or paid in the settlement of such estates." The next article provides that where there are no children no administration shall be necessary, the community property in such cases passing to the survivor charged with the "debts." By article 3597 it is made the duty of the survivor to attach to his inventory "a list of all indebtedness due by said community estate to other parties, giving the amount of each debt, and the name of the party or parties to whom it is due." The next article (3598) in prescribing the necessary conditions of the bond, provides that he will faithfully administer the community estate and pay over one-half the surplus thereof "after the payment of the debts with which the whole of such property is properly chargeable."

Article 3601 requires the survivor to keep a fair and full account and statement "of all community debts" paid by him, and, upon final partition of the estate shall account to the legal heirs for their interest in such estate, "after deducting therefrom all community debts." Article 3603 provides that—

It shall be the duty of the survivor "to pay all just and legal community debts as soon as practicable, and according to the classification and in the order prescribed for the payment of debts in other administrations."

So that, as indicated, we think it evident that the existence of community debts is an important consideration in determining whether or not a community administrator shall be appointed. We do not care to go further than this, for as has often been held in cases where community debts exist, the survivor in payment thereof may dispose of the community property without any character of administration, and the Legislature clearly manifests a dual purpose. The existence of children is also made an important, if not the controlling, inducement to the legislation. As we have already seen, it is provided that where there are no children there is no necessity for a community administration, and in the article prescribing the requisites of the survivor's application it is made necessary that the application show that the deceased "left a child or children, giving the names, sex, residence and age of each child." The existence of community debts is not made a requisite of the application, and hence it may be said that the dominant reason of the Legislature was to enable the survivor to continue to guard and protect the interest of the children in the same manner as had theretofore existed, and that hence the mere nonexistence of community debts should not be used to defeat such predominating purpose.

The foregoing observations, however, but bring us to the further question of whether the "child or children" shall be minors or adults. Appellees contend that no distinction is to be made in this respect. We have no decision directly in point, and the article of the statute (3595) fails to say whether or not the child or children therein referred to shall be minors. Our law provides that in all interpretations of the statutes the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy, and that the ordinary signification shall be applied to words, with certain exceptions not here pertinent. See Rev. St. art. 5502. In its widest sense, by child or children is meant an offspring of either sex and of any age, and these terms are generally so considered in statutes of descent and distribution, and when used in devising property by will. Nevertheless, a very general, and perhaps the most frequent, interpretation of the term "child" is that such a one is a young person of any age less than maturity. See Webster's Dictionary. In Black's Law Dictionary it is said that, in the law of negligence and in laws for the protection of children, "child" is used as the opposite of "adult." In the case of Bell v. State, decided by our Court of Criminal Appeals reported in 18 Tex. App. 53, 51 Am. Rep. 293, in defining the word "child" as used in our Penal Code prohibiting an assault by an adult male upon the person of a female or child, it is said that in its common acceptation it meant "a young person as contradistinguished from one of an age sufficient to be supposed to have settled habits and fixed discretion." In 7 Cyc. p. 123, children are defined as:

"Persons under lawful age, as distinguished from adults; infants, minors, persons of tender years, young persons; youths, the young

of the human species, generally under the age of puberty, without distinction of sex."

In 11 Corpus Juris, p. 756, in treating the word "child," it is said:

"The term has a second well-understood meaning, irrespective of parentage, and may denote persons under the age of 21 years, as distinguished from adults, and it is used in this sense in the law of negligence, and in the laws for the protection of children, etc., and means the young of the human species, generally under the age of puberty, or not old enough to dispense with maternal aid and care," etc.

In Hoffman v. Neuhaus, 30 Tex. 634, 98 Am. Dec. 492, our Supreme Court, in construing the word "child" as used in our laws exempting the homestead for the benefit of the head of the family with children, defines it as meaning "minor children."

Many other instances may doubtless be found where the terms "child or children" have been construed or applied in the general sense of the foregoing definitions, and we think that it is in such sense that the terms "child or children" are used in article 3595, prescribing the requisites of the written application for a community administrator. To repeat, it is required that the application state that the deceased left a "child or children, giving the names, sex, residence and age of each child." The requirement that the "age" of the child shall be stated can have no significance if wholly unimportant. It must have been intended by such a requirement that the court would be thus informed of whether the child was of such maturity as needed the care and protection of the surviving parent. It may be supposed that, in order to avoid the oftentimes burdensome and cumbersome process of a guardianship or a general administration, the Legislature deemed that such guardianship, not only of the person but of the property of the minor child, could safely be committed to the surviving parent. In cases where the children have attained lawful age, no guardianship is needed, and the parent has no right to a further custody of the person or estate of the child. Upon the death of a member of the community his estate vests at once in his children, and those of lawful age may at once, without let or hindrance, dispose of their estate that is unincumbered by a community debt. We therefore conclude that the facts shown in appellant's petition for certiorari, and which must be accepted as true upon a general demurrer, show that the county court improperly granted the community administration to Mrs. M. A. Hise.

[7, 8] For yet another reason appearing in the petition, we think it should be held that the grant of community administration to Mrs. M. A. Hise was improvident. As shown in the petition, there had theretofore, with her consent and her instance, been granted a legal administration to R. L. Hise, an adult son, and that such administration was yet pending. It certainly could not have been within legislative contemplation that two independent administrations should be granted and exist at the same time. That such a course would be productive of much confusion and conflict of authority is apparent. If in a proper case and within a proper time a community survivor applies for appointment as community administrator, showing a necessity therefor, as required by the statutes, he may, doubtless as stated in some of the decisions, withdraw the estate from an exising administration, but in such case the former administration should be closed. Appellees suggest that the facts relied upon by appellant as invalidating the appointment of Mrs. Hise as community administratrix also show the invalidity of the administration granted on the application of R. L. Hise, but as to this we merely observe that no direct attack is made upon the orders appointing R. L. Hise administrator, and such orders therefore cannot in this collateral proceeding be declared to be void.

We conclude that for the reasons stated the court erred in sustaining the general demurrer to appellant's petition, and that the judgment must therefore be reversed, and the cause remanded for a trial upon the facts.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes