| 92 | 345 |
| 96 | 768 |
| 92 | 345 |
| 98 | 824 |
| 92 | 345 |
| 103 | 544 |
| 103 | 724 |

## Richmond.

ROBERT M. BURKE v. ALICE E. SHAVER.

DECEMBER 5, 1895.

1. PROMISE OF MARRIAGE—*Illegal Consideration.*—A promise of marriage made in consideration of sexual intercourse is illegal and void.

2. INSTRUCTIONS—*Law Applicable to the Evidence.*—Instructions which are founded on evidence in the cause should be given, if they correctly propound the law as applicable to such evidence; but if not so applicable, they should be refused, however correct they may be as abstract legal propositions.

3. CONTRACTS—*Repudiation of Before Time of Performance—When Suit May be Brought.*—If one repudiates his promise and declares that he will not be bound by it, the promisee need not wait for the time of performance to arrive, and, if the engagement is general, need not request its fulfilment, but may sue at once for the breach.

4. EVIDENCE—*Irrelevancy.*—In an action for breach of promise of marriage it is not error to refuse to allow the defendant to introduce in evidence letters written by the plaintiff to another than the defendant, when it appears that the letters are not improperly indelicate, and in no way compromise the character of the writer, for which purpose they were offered in evidence.

5. EVIDENCE—*Examination of Witnesses—Discretion of Trial Court.*—The examination of witnesses lies chiefly in the discretion of the trial court, and its exercise is rarely, if ever, to be controlled by an appellate court. Much latitude of discretion should be allowed the trial court in the matter of recalling witnesses, and its action will not be reversed by an appellate court except for palpable error.

Argued at Staunton.    Decided at Richmond.

Error to a judgment of the Circuit Court of Rockingham county, rendered October 14, 1893, in an action of *assumpsit,*

wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

This was an action of *assumpsit* to recover damages for an alleged breach of promise of marriage. The damages laid in the declaration were $5,000. There was a verdict and judgment in favor of the plaintiff for $1,000.

The opinion states the case.

*George E. Sipe* and *John T. Harris, Jr.,* for the plaintiff in error.

*Patterson & Hass,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Rockingham county. The action is for a breach of promise of marriage brought by the defendant in error against the plaintiff in error, the declaration alleging, in aggravation of damages, the seduction of the defendant in error, birth of child, &c.; and at the trial the jury awarded damages in the sum of $1,000.

The first assignment of error is to the refusal of the trial court to give the following instructions asked for by the defendant (plaintiff in error):

Instruction 1. "The jury are instructed that if the plaintiff yielded to the request of the defendant to have sexual intercourse with her, upon the promise of the defendant if the plaintiff got into trouble he would marry her, that such contract did not constitute a legal contract of marriage."

Instruction 2. "The jury are instructed that upon an

agreement between a single man and a single woman to have
illicit intercourse, and that, if pregnancy of the female shall
follow, the man agrees to marry the woman, such an agree-
ment is against morality, and does not create a legal contract
of marriage."

The first question to be determined is whether these instruc-
tions correctly propound the law applicable to the case. A
contract for marriage is the mutual agreement of a man and
a woman to marry each other, or become husband and wife in
the future, and must satisfy the legal requirements as to par-
ties, consideration, &c., as other contracts must.

Wharton, in his work on the Law of Contracts, Vol. I.,
sec. 373, states the law thus: " An agreement is void when
the consideration is future illicit cohabitation, no matter what
other considerations may unite, or how skillfully the illegal
object might be clothed.    *    *    *    A promise of marriage
on consideration of sexual intercourse also is void."

Chancellor Kent, in his Commentaries, Vol. II. (ed. 13),
p. 467, in discussing what constitutes a valuable consideration
of a contract, says: " The consideration must not only be
valuable; but it must be a lawful consideration, and not
repugnant to law, or sound policy, or good morals. *Ex turpi
contractu actio non oritur;* and no person, even so far back
as the feudal ages, was permitted by law to stipulate for
iniquity. The reports in every period of English jurispru-
dence and our American reports equally abound with cases of
contracts held illegal on account of the illegality of the con-
sideration; and they contain certain striking illustrations of
the general rule that contracts are illegal when founded on a
consideration *contra bonos mores*, or against principles of
sound policy, or founded in fraud, or in contravention of the
positive provisions of some statute law. · If the contract grows
immediately out of, or is connected with, an illegal or
immoral act, a court of justice will not enforce it."

In the case of *Saxon* v. *Wood*, 30 N. E. Rep. 797, where the complaint alleged " that defendant, who was a suitor of plaintiff, an unmarried woman, solicited her to have sexual intercourse with him, and, on her refusal, agreed that if she should yield to his wishes, and thereby became pregnant, he would at once marry her ; that in consideration of such agreement, to which she consented, plaintiff yielded to defendant's solicitations, and did have sexual intercourse with the defendant, from which pregnancy resulted, and from which a child was born to plaintiff, and the defendant, on her request to fulfil his agreement, refused to marry her," it was held that the action would not lie, the contract being based on an immoral consideration.

Judge Black, in delivering the opinion of the appellate court of Indiana in that case, cites with approval what has been above quoted from Kent's Commentaries, and a number of other authorities on the same line.

. In the case of *Hanks* v. *Nagle*, decided by the Supreme Court of California (54 Cal. 51), which was an action for a breach of promise of marriage similar in many respects to the case at bar, the plaintiff testified, in effect, that the defendant promised to marry her if she would surrender her person to him, and that she thereupon consented.   The court held that the promise was void on account of the immorality of the consideration, the court saying in its opinion that, " upon well-settled principles, the plaintiff should not have recovered on a contract of this character, as, being a contract for illicit cohabitation, it is tainted with immorality."   Citing Story on Contracts, sec. 458, and *Steinfelt* v. *Levy*, 16 Abb. N. S. 26.   In the latter case, which was decided by the Supreme Court of New York, Chief-Justice Neilson, in discussing the nature of the contract sued on, says : " It is hardly necessary to say that a contract thus grossly immoral would not support the action."   " The learned presiding judge [of the

court below] seems to have had in view the rule that where a
contract is founded on two considerations, one of which is
merely void, but not vicious, and the other good, the contract
is binding to the extent of the good consideration. He ruled
that if in fact mutual concurrent provisions to marry were a
part of the consideration, the plaintiff could recover. It does
not seem to have occurred to him that such a rule would tend
to legalize contracts for prostitution, or that the principle in
view is never applied to a contract tainted with immorality.
Courts of justice will not aid the illicit or corrupt arrange-
ment, or sift one part of it to save the other part."

The learned counsel for defendant in error cites this case as
authority for his contention that Instructions 1 and 2 were
not applicable to the case at bar, because there was a promise
of marriage independent of the promise made in considera-
tion of sexual intercourse; but the case of *Steinfelt* v. *Levy*
sustains the doctrine laid down in *Hanks* v. *Nagle,* and the
other authorities above cited. Moreover, we shall see later
on that the evidence does not show a promise in the case at
bar by the plaintiff in error to marry the defendant in error,
independent of the promise to marry her if she would have
sexual intercourse with him, and became pregnant. The case
of *Kurtz* v. *Franks,* 40 Amer. Rep. 275, and *Clark* v. *Pen-
dleton,* 20 Conn. 495, are also cited by counsel for defendant
in error, but they do not apply to the case at bar. In the first
of these cases the man promised to marry the woman in Sep-
tember or October, if they could agree and get along and be
true to each other, and that if she became pregnant from their
intercourse he would marry her immediately. She became
pregnant in July, but he then refused to marry her. The
court held, upon the particular facts in that case, that the
illicit intercourse did not so enter into the consideration as to
render the agreement void; that an action for the breach
accrued at once. The real point decided was that the plain-

tiff could maintain her action upon the defendant's refusal to marry her after pregnancy, without waiting until the time fixed upon for the marriage by the original agreement.

We think that Instructions Nos. 1 and 2 correctly propounded the law. It only remains to be determined whether the instructions are relevant to the testimony in the case. Instructions founded on evidence in the case, and consistent with the law, are proper, and should be given; but otherwise where they have no basis in the evidence. *Moon's Adm'r* v. *R. & A. R. R. Co.*, 78 Va. 745; *Preist, &c.* v. *Whitaker, Sheriff*, Id. 151; *Birch* v. *Linton, &c.*, Id. 584; *Rosenbaums* v. *Weeden, Johnson & Co.*, 18 Gratt. 785.

The testimony of the plaintiff (defendant in error) is as follows: On examination-in-chief she says that these improper relations (illicit intercourse) commenced in July, 1890; that they occurred afterwards, and continued up to the last of March, 1892. " He said he was going to marry me if I would consent. He often made that statement." Q. " Were you engaged to him at the time of the first act of improper intercourse, in July, 1890? " A. " I asked him if he would be true to his promise, and he said that he would; that he was going to marry me any way." Q. " Did he say anything about marrying you the last time your relations with him were improper, in March, 1892? " A. " He said that he would be true to his promise."

On cross-examination she says that nothing was ever said about the time; only he said if I got in trouble he would marry me. Q. " You mean in a family way? " A. " Yes, sir." Q. " And you were satisfied with this arrangement? " A. " Yes, sir." Q. " When did he tell you this? " A. " He told me in the first beginning, in July, 1890. He promised me this the first time, and he promised me afterwards." Then, in answer to the question propounded by the court, " You say the first time Burke had intercourse with you he promised to marry you? " she answers, " Yes, sir."

And then, on re-examination, she stated that " when the first act of intercourse took place Burke said he was going to marry her; that she asked him when he was going to marry her, and he said when she got in trouble. He said he was going to marry me any way."

This is substantially all the testimony as to the promise of marriage, or the seduction, and it will be noted that the plaintiff said nothing as to any promise (or engagement) of marriage prior to the first act of illicit intercourse, in July, 1890. On the contrary, she says, in answer to the cross-question, " Was anything said about getting married between June, 1889, (the first time she met him,) and July, 1890 ? " " He expressed his affections that way. We were not particularly engaged." It appears, therefore, that the question was directly raised by the evidence whether or not this alleged promise of marriage was made in consideration of sexual intercourse, or upon condition that she became pregnant, which question was to be determined by the jury, and the defendant had a right to have the jury instructed as to the law that was to guide them in determining that question.; and, as Instructions Nos. 1 and 2 correctly propounded the law, they should have been given to the jury. The refusal to give these instructions was error.

The defendant also asked the court to instruct the jury as follows :

Instruction No. 3. " The jury are instructed that if they believe from the evidence that no day was fixed for the marriage, the plaintiff must prove that she offered to fix the time and place of marriage, and that, in default of such offer to fix the time and place of the marriage, there is no breach of the contract, and the plaintiff cannot recover."

In the abstract this instruction embodies the law, but we do not think, upon the testimony in this case, that it applies.

Where one repudiates his promise, and declares that he will not be bound by it, the party not in default need not wait for the time of performance to arrive, and, where the engagement is general, need not request the fulfilment of the promise, but may sue at once. 2 Amer. & Eng. Ency. of Law 524, and cases cited.

The evidence here is that the defendant denied *in toto* the alleged promise of marriage before this action was brought. The instruction was therefore properly refused.

The next assignment of error is to the refusal of the court to permit the introduction of two letters written by the defendant in error in 1890 to a man other than the plaintiff in error. These letters are childish, and, when the age of the writer (shown to be about twenty-three or twenty-four years old) is considered, they may be characterized as silly, but are not improperly indelicate, and in no way compromise the character of the writer, which could have been the only purpose for which they were offered in evidence. They were, we think, properly excluded. *Fry* v. *Leslie*, 87 Va. 279.

Error is also assigned to the action of the court in permitting the recall of Walter Shaver for the purpose of rebutting statements made by the defendant and his brother.

The subject of the examination of witnesses, says this court, in *Brooks* v. *Wilcox*, 11 Gratt. 411, lies chiefly in the discretion of the court in which the cause is tried, and its exercise is rarely, if ever, to be controlled by an appellate court. Again, in *Fant* v. *Miller*, 17 Gratt. 187, this court says: " Unless it is palpably improper to grant leave for the second examination of a witness, an appellate court will not, for this cause, reverse the decree, as the Circuit Court ought to possess much latitude of discretion in the decision of such questions." In the light of this authority, this assignment of error cannot be sustained.

As this case, for the error stated above, has to go back for

a new trial, it becomes unnecessary for us to consider the fifth and last assignment of error set out in the petition of the plaintiff in error, which is to the refusal of the court to set aside the verdict rendered by the jury and grant the defendant a new trial, because the verdict is contrary to the law and the evidence.

For the reasons stated, and because of the error of the trial court in refusing to give Instructions Nos. 1 and 2 asked for by the defendant, the judgment in this case must be set aside and annulled, and the case remanded to the Circuit Court of Rockingham county for a new trial, to be had in accordance with this opinion.

*Reversed.*