# Richmond.

## R. W. BRAGG v. FRANK ELMORE.

March 21, 1929.

The opinion states the case.

*George E. Allen* and *Peyton G. Jefferson*, for the plaintiff in error.

*E. P. Buford*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

This is a motion for judgment instituted by R. W. Bragg, alleging the publication by the defendant, Elmore, of a common law libel as well as for insulting words under our statute (Code 1924, section 5781).

The words upon which the motion is based are contained in a postscript to a letter written by Mrs. L. A. Chappell, addressed, "Justice of Peace, Brunswick Co., Alberta, Va.," and are clearly actionable. They are: "Bragg is not a gentleman he also wanted to *ruen* my Girl a man running for office should know the laws, if there are still laws in existence, and I am going to enforce it."

Bragg was at the time a candidate for the House of Delegates from Brunswick county. This letter reached Alberta on July 12th, was delivered to the defendant, Elmore, who was a justice of the peace of Brunswick county, and two days later he submitted it to the Commonwealth's attorney of Brunswick county for his advice as to the proper course he should take, and was advised that the letter neither required nor justified any official action on his part.

The defendant, Elmore, also consulted Mr. E. P. Barrow, a member of the bar of Brunswick county, with whom the letter was left, and it was also exhibited in Brunswick county to the opposing candidate for the House of Delegates, L. J. Hammack. Certainly, within a few days after its receipt on July 12th, quite a number of people in Brunswick county had heard about it and several copies of it had been made. While the plaintiff, Bragg, does not seem to have had a copy of it until July 15th, its existence and substance seem to have been quite well known in Brunswick county.

On the morning of July 15th a report that the libelous charge in the letter was false and had been forged was in general circulation in Bruns-

wick county, and the defendant, Elmore, had ample ground for believing that he and Barrow were being accused by Bragg with having committed the forgery. Elmore was not familiar with Mrs. Chappell's handwriting, and knew nothing about the letter except that he had received it by mail. He was informed that Mrs. Chappell, the apparent author of the letter, had two nephews residing in Nottoway county, namely, Archer Cobb, who had some position in a bank at Blackstone, and J. Lindsay Cobb, the clerk of the county, both of whom were presumed to be familiar with the handwriting of their aunt. Upon again consulting the Commonwealth's attorney, he was advised to go to Nottoway county to see these nephews of Mrs. Chappell, and to submit the letter to them for inspection.

According to the testimony introduced by and for the defendant, his sole purpose in going to Nottoway county was to exhibit this letter to these two near relatives of Mrs. Chappell for the purpose of determining whether or not the letter had in fact been written by their aunt and was genuine. He executed the plan and submitted the letter to the Messrs. Cobb and to their friend Douglas Tuggle, who was asked by Archer Cobb to attend the conference. These three gentlemen to whom the letter was so exhibited made no further publication of it. That publication in Nottoway county is made the sole basis of this motion. It is perfectly apparent that in Brunswick county the letter had already been widely circulated, while in Nottoway county its circulation was limited, and according to the defendant's claim was only a matter of personal and private concern.

The plaintiff, in response to an order of the court requiring a bill of particulars, stated only the names of

J. Lindsay Cobb, Archer Cobb and Douglas Tuggle, as the persons to whom the libel had been exhibited, and this of course limits the testimony in this case.

The defendant did not file any plea of justification, but relied upon a plea of not guilty, and that the occasion of the publication in Nottoway county by him was privileged, and this only by way of defense against the charge of forgery against him which had been circulated in Brunswick county.

There was a tedious jury trial which resulted in a verdict and judgment in favor of the defendant.

The record is voluminous. There are nineteen separate assignments of error, and the briefs are elaborate; but in our view of the facts, as determined by the verdict of the jury, no extended or detailed discussion of these several assignments of error is either necessary or appropriate.

The case has some peculiar features. It is insisted for the plaintiff in error that the court committed many harmful errors, but they all, as it seems to us, arise out of and depend upon the fact that the words of the libel are actionable *per se*, and the contention that because there was no plea of justification it followed that the court could only instruct the jury that the words were actionable, that they were presumed to be false, that the occasion was not privileged, or if privileged was abused, and that therefore they must find a substantial verdict for the plaintiff.

Pursuant to this method of attack, while emphasizing the fact that Mrs. Chappell and her daughter had later signed documents which had been published in Brunswick county by Dr. Bragg, to the effect that the libelous matter in the postscript had been forged, the attorneys for the plaintiff at the same time repeatedly admitted, for the purposes of this case, that the letter

had not been forged and had been received by the defendant in the same condition in which it was exhibited. So that, whenever counsel for the defendant sought to prove any fact concerning the letter or the attending circumstances, objections were interposed and it was repeatedly insisted that these circumstances could not be shown because to permit this would be to allow an indirect effort to establish the truth of the libel.

The rule of law, that in the absence of a plea of justification the truth cannot be shown, is of course perfectly well settled; but there is another rule equally established which is applicable under the circumstances of this case. It would have been a grave injustice to the defendant to confine the evidence to the bare fact that the letter had been taken to Nottoway county and exhibited as has been stated. It was absolutely essential in order to understand the case that the entire history of that letter be given to the jury. They were called upon to weigh conflicting testimony involving the motives and conduct of all the parties in order to determine the questions of malice and punitive damages. The trial court repeatedly told the jury that the libelous words in the letter were presumed to be false, and gave an unequivocal written instruction when the case was submitted, that the charges contained in the letter and the postscript thereto were conclusively presumed to be false.

Under the facts of this case, the plaintiff was entitled to this unambiguous and specific pronouncement by the court. There is no reason to suppose that the jury failed to understand and heed it. If the plaintiff's attorney found it difficult to prosecute his case because of the other established and conceded fact that the postscript had in fact been written, not by the defend--

ant but by Mrs. Chappell (though thereafter denied by her and charged in her written statement to Dr. Bragg to be a forgery, and then as a "vile forgery" by her testimony given orally), this, while perhaps unfortunate, was inevitable. The circumstances under which the letter originated and what became of it thereafter were proper matters for the consideration of the jury. Of course, this testimony could not be admitted for the purpose of proving the libelous words to be true, and this was conceded. Certainly it should be deemed established in the case by the pleadings, the admissions of the parties concerned, their attorneys, the author of the libel, the testimony and the instructions of the court, that the charge against Dr. Bragg is libelous and false.

Some of the assignments of error are based upon the rulings of the court during the trial and a written instruction to the effect, that while the antecedent and subsequent publications of the libel in Brunswick county might be proved, they could be considered by the jury only upon the question of malice, and not for the purpose of enhancing the actual damage claimed by the plaintiff as resulting from the specified publication in Nottoway.

Of course, all instructions should relate to the peculiar facts of the case being tried. By his bill of particulars, the plaintiff had limited himself in this action to damages fairly resulting as a consequence of the publication in Nottoway county and to the three persons named. This action in Nottoway county against the defendant did not debar the plaintiff from instituting other actions against other persons in Brunswick county who had also published the libel, but there was grave danger to the defendant, unless there had been such an instruction, that he might be

held liable for damages to the plaintiff directly inflicted by and because of the several other publications by other persons in Brunswick county. If he suffered substantial damage, that damage chiefly accrued in Brunswick county and directly resulted from the publications there. The plaintiff had elected to make the specific publication in Nottoway county to the persons named the sole basis of this motion. The court properly told the jury that if there were other publications in Brunswick county which resulted from exhibiting the letter to the three persons in Nottoway county, they might hold the defendant liable for the consequential damages. Under the facts of this case, we find no error in these rulings. The jury were plainly told in another instruction that any publication of the libel elsewhere, either before or after the publication in Nottoway county, might be considered in determining whether or not the publication in Nottoway was malicious, and this was all to which, under the pleadings, this plaintiff was entitled.

Another question is perhaps the most debatable question in this case, and arises out of the conflicting testimony, which, on this point, may be thus, for clarity, repeated and summarized: According to the testimony submitted for the defendant, he had been publicly charged with having forged the postscript to the letter which as justice of the peace he had received from Mrs. Chappell, which reflected so seriously upon Dr. Bragg, the plaintiff. He had been informed that the ostensible author of the letter had two nephews, who were men of intelligence and standing, in Nottoway county, who would probably be familiar with their aunt's handwriting, and so, upon the advice of the attorney for the Commonwealth, he together with his friend and attorney, Mr. E. P. Barrow, went to Notto-

way county to see these relatives for the purpose of securing their opinion as to whether or not the libelous matter had been forged. This plan was executed, the letter was shown to the nephews referred to, and Tuggle, their friend, was called in. The letter was only exhibited to them; no indecorous language was used by the defendant, and as a result of that interview he concluded that the libelous matter had not been forged. If this had been all, it would be perfectly clear that the occasion was one of qualified privilege, and so the jury should have been instructed. But this is not all, for on the other hand, the testimony introduced for the plaintiff tended to show that at the time of this visit to Nottoway, plaintiff (Bragg) had seen neither the letter nor a copy of it, was ignorant of its contents, and had made no charge relative to the offensive language. It appears, however, that he also sought and had an interview with the same persons in Nottoway on the afternoon of the same day; that this was immediately followed by a trip to Clifton Forge, where as a result of his call there upon Mrs. Chappell and her daughter, accompanied by his attorney, he was absolutely vindicated by both from any wrongdoing. He secured a statement in writing from Mrs. Chappell that the postscript in the letter was not written by her and was a forgery, and that she did not intend by the letter to reflect upon the moral character of Dr. Bragg. He also then secured a written statement from Lucile Chappell, her daughter, fully acquitting him of the imputation of wrongdoing. These statements were afterwards made a part of a circular distributed in Brunswick county, and published in the local newspaper over Dr. Bragg's signature a few days before the primary election. In that circular he specifically charged in these words, that the libelous language had been forged:

"The above described postscript to said letter is absolutely untrue and was not written by Mrs. Chappell and was written by some of my political enemies for the purpose of injuring me in the pending political campaign."

Upon this state of facts it is insistently urged for the plaintiff in error that the court erred in refusing to decide unequivocally whether or not the occasion was privileged.

These are the instructions which were given to cover this point:

"1. The court instructs the jury that if they believe from a fair preponderance of the evidence that the defendant showed the letter of July 11th, 1927, and the postscript thereof, to Archer Cobb, Douglass Tuggle, and J. Lindsay Cobb, in Nottoway county, and that the words used in the postscript, from their usual construction and acceptation, are construed as insults, and tend to violence and breach of the peace, and that the same was shown upon an occasion which was not privileged, as hereinafter defined in these instructions, then the defendant is liable to the plaintiff in such damages as the jury may believe from the evidence the plaintiff is entitled to recover from the defendant under the instructions relating to damages."

"2. The court instructs the jury that if they believe from the evidence that when the defendant showed the letter of July 11, 1927, the postscript attached thereto, to Archer Cobb, Douglas Tuggle and J. Lindsay Cobb, in Nottoway county, the defendant had information that the plaintiff claimed that the letter and the postscript thereto attached, or any part thereof, was a forgery, and that the defendant acted in good faith upon such information in showing said letter and postscript, for the purpose of finding out whether the said

letter and postscript was written by Mrs. L. A. Chappell, or was a forgery, then the defendant was acting upon a privileged occasion, and cannot be held for his actions upon such occasion, or occasions, in thus showing the letter and postscript, and the jury must find for the defendant."

"7. The court instructs the jury that a privileged communication means nothing more than that the occasion of making it rebuts the *prima facie* presumption of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the burden of proving malice in fact. But the plaintiff is not required to prove such malice by extrinsic or outside evidence only. He has a right to require the alleged libel itself be submitted to the jury along with all the circumstances under which it was published that the jury may judge whether there is malice on the face of it in view of the circumstances under which it was published."

The general rule, which has been repeatedly stated by this court, is that it is the court's duty to determine as a matter of law whether the occasion is privileged, while the question of whether or not the defendant was actuated by malice, and has abused the occasion and exceeded his privilege are questions of fact for the jury. *Chaffin* v. *Lynch*, 83 Va. 106, 1 S. E. 803; *Williams Printing Co.* v. *Saunders*, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693; *Carpenter* v. *Meredith*, 122 Va. 446, 96 S. E. 635; *Aylor* v. *Gibbs*, 143 Va. 644, 129 S. E. 696; *Chalkley* v. *Atlantic Coast Line R. Co.*, 150 Va. 301, 143 S. E. 631.

There can be no doubt whatever as to this rule. It has been so correctly stated in the cases cited and many others. This case, however, illustrates a qualification of that rule. Generally, all the facts in connection

with the actual publication of the libelous language are apparent. This was true in the precedents we have cited. Occasionally, however, cases arise in which, because of sharp and substantial conflicts in the testimony as to the facts upon which the claim or privilege rests, the question as to whether the particular occasion was privileged becomes a mixed question of law and fact.

This is one of those exceptional cases.

The rule and its qualifications are thus stated in 17 R. C. L. section 75, page 329: "The question whether or not a communication is privileged is primarily a question of law for the court where the facts and circumstances surrounding the publication are not disputed by the parties. But where the facts do not clearly appear, or are not conceded, the question whether the communication is privileged becomes a question of mixed law and fact, and the court should instruct the jury as to what conditions are necessary to render the communication privileged, and then submit the case to them to determine from the disputed facts whether the communication was made under such circumstances as to bring it within the class of privileged communications. Moreover, even if the court decides that a libelous communication or a slanderous statement was made on a privileged occasion, there still remains to be determined in the case of those communications only qualifiedly privileged the question whether such communication or statement was made in good faith under an honest belief as to its truth, and without actual malice; and if the court decides that a libelous communication was privileged, the question whether there was actual malice is for the jury to determine, either from direct proof or an inference from other proof or from the libel itself. In

other words, the use which the defendant has made of his privilege, that is, whether he has acted maliciously or not, is a question for the jury to decide.''

There are many cases from courts of the highest authority which support the qualifications to which we have referred. There is an elaborate note on the general subject to the case of *Switzer* v. *American Ry. Express Co.* (119 S. C. 237, 112 S. E. 110), in 26 A. L. R. 830.

Among the recent cases from other jurisdictions, referring to the question which this record presents, which are helpful, are these:

In *Adam* v. *Ward* (1917), A. C. (Eng.) 309, 86 L. J. K. B. (N. S.), 649, 117 L. T. (N. S.), 34, 33 Times L. R. 277, Ann. Cas. 1917D, 249—H. L., Finlay, L. C. said: "It is for the judge and the judge alone, to determine as a matter of law whether an occasion is privileged, unless the circumstances attending it are in dispute, in which case the facts necessary to raise the question of law should be found by the jury."

So, in *McGaw* v. *Hamilton* (1900), 15 Pa. Super. Ct. 188, it is said, in substance, that if there is any doubt (meaning any fair doubt) as to the circumstances under which the alleged libelous communication was made, the jury must find what the circumstances in fact were, or what the defendant honestly believed them to be, if that is the point to be determined; and then, based on their findings, the court decides whether or not the occasion was privileged.

Whether or not a particular utterance was made on a privileged occasion depends upon the circumstances under which it was made. It follows from this that the court cannot always determine as a matter of law whether the occasion was privileged where the circumstances are neither shown nor conceded. So that,

in the absence of such proof or concession, it is sometimes necessary or convenient for the jury to determine the precise facts. *Harris* v. *Zanone* (1892), 93 Cal. 59, 28 Pac. 845.

We gather this from *Bland* v. *Lawyer-Cuff Co.* (1919), 72 Okl. 128, 178 Pac. 885: Although it is a legal question for the court to determine, whether the occasion is such as to bring the alleged defamatory publication within the protection afforded to conditionally privileged communications, where there is no conflict or dispute as to the circumstances, nevertheless, where the evidence is conflicting, it is proper for the court to instruct the jury as to what facts constitute the occasion privileged, and leave them to determine the conflict in the evidence.

*Hubbard* v. *Cowling* (1913), 36 Okl. 603, 129 Pac. 714, supports the same proposition, namely, that where the evidence is uncertain and conflicting as to whether or not the occasion is in fact privileged, it is proper for the court to instruct the jury as to whether or not the occasion was privileged, and leave them to say whether those facts were proved.

In *Whitley* v. *Newman* (1911), 9 Ga. App. 89, 70 S. E. 686, it is said that where the facts are questionable and there is a conflict in the evidence, that conflict should be submitted to the jury. *Bavington* v. *Robinson* (1914), 124 Md. 90, 91 Atl. 777, repeats the same qualification and cites *Bramsfield* v. *Howeth*, 107 Md. 278, 68 Atl. 566, 24 L. R. A. (N. S.) 583.

In *Howland* v. *George F. Blake Mfg. Co.* (1892), 156 Mass. 572, 31 N. E. 658, the rule with its qualification is thus clearly expressed: "When the facts are determined, it is for the court to say, as a matter of law, assuming a given state of facts, whether a privileged occasion is shown;" but "on conflicting and uncertain

evidence, it is proper to instruct the jury in regard to what constitutes a privilege, and leave them to say, on the evidence, whether the essential facts are proved."

In *Parker* v. *Republican Co.* (1902), 181 Mass. 396, 63 N. E. 931, the same qualification is stated in a case in which the question as to whether proceedings in a police court, the oral testimony being in conflict, had been correctly reported and published.

In *John W. Lovell Co.* v. *Houghton* (1889), 116 N. Y. 520, 22 N. E. 1066, 6 L. R. A. 365, the facts upon which the defendant based his claim of privilege were challenged by the plaintiff, and it was said that under such circumstances, if there is a conflict in the evidence, "it becomes the duty of the court to submit the question to the jury under proper instructions, to determine the existence or non-existence of the facts upon which the claim of privilege is sought to be founded."

In *Neil* v. *Fords* (1893), 72 Hun, 16, 25 N. Y. Supp. 408, we find this: "Upon the trial, as now, the appellant invoked the general rule that whether a publication is privileged, and therefore *prima facie* excusable, is a question of law for the court. An exception to the general rule arises where the facts upon which the defendant bases its claim of privilege are challenged by the plaintiff. Then a jury must determine the existence or non-existence of the facts which are asserted as the basis of the privilege. * * * The consideration which we have given to them leads to the conclusion that the facts upon which the claim of privilege was founded are so far disputed as to deny to the court the right to hold, as matter of law, that the communication was privileged."

It is held in *Post Pub. Co.* v. *Moloney* (1893), 50 Ohio St. 71, 33 N. E. 921, that where issue is joined upon allegations of fact upon which the alleged priv-

ilege depends—that is, whether a report of a judicial proceeding was accurate—the issue is for the jury, and a refusal to instruct that the publication was privileged is not error.

The cases could be multiplied, but these are sufficient for present purposes. Of course, it is true, and this is either expressly or impliedly conceded, that where the circumstances are clear, or where there is no substantial doubt as to the facts, the question presented is a question of law, which the court must determine. In such a case it is error to submit it to a jury. The trial court should not submit such a question to a jury merely because of conflicting claims or contentions. It should only do so when there is a substantial conflict in the evidence and it is necessary to determine the facts before the legal question can be intelligently decided by the court.

In this case, it is perfectly apparent that if the real motive of the defendant, when he exhibited the libelous letter in Nottoway county, was to injure Dr. Bragg in his campaign for nomination to the House of Delegates, or if his purpose was to excite the prejudice of those to whom it was exhibited and enlist their aid in giving further publicity to the libelous charges, then the occasion clearly was not privileged, and the plaintiff is entitled to recover. If, on the other hand, he had in fact been charged with forgery and his purpose on that occasion was to defend himself and to determine whether or not the letter was in fact a forgery, why then he was strictly within his legal rights, and there being no evidence in the case to indicate that he was actuated by express malice, or that he abused his privilege, there should be no recovery.

This must have been the view of the attorney for

the plaintiff, for this appears in one of the instructions, (a), which he asked the court to give:

"But if the jury believe from the evidence that before the defendant exhibited said letter to the Cobbs, information had come to the said defendant that the plaintiff had stated that the postscript to. said letter was a forgery, meaning thereby that said language was forged, or written by said defendant, or some one else, with the connivance of said defendant; that the said defendant honestly believing that the plaintiff had made such charges against him, exhibited said letter to the Cobbs, in good faith, without malice, in an honest endeavor to obtain information from them as to whether the whole of said letter, including said postscript written by the said Mrs. L. A. Chappell, which information was sought solely for use by the said defendant in vindication of himself and character from said false charges alleged to have been made by the plaintiff, then the jury will find for the defendant."

This conflict in the testimony as to the occasion distinguishes this case from many in which the rule has been laid down without the qualification. There was nothing unnatural in the mental attitude or conduct of the defendant, as claimed by him, at the time of the publication. He did not know Mrs. Chappell; he knew nothing of the facts; he had received the letter in his public capacity as justice of the peace, and had in the first instance to determine whether any official action on his part was appropriate. When advised by the attorney for the Commonwealth that he had no duty to perform and should take no action, that was the end of the matter so far as he was personally concerned; but when he heard, as he claims, and shows by testimony, that Dr. Bragg and his political friends were charging him with having colluded with Barrow

in forging the letter or its postscript for partisan purposes, he was entitled to defend himself from that aspersion. It was upon the advice of counsel that he sought out those persons most accessible, who were nearly related to the author of the letter, and asked for their judgment as to whether or not the letter was a forgery. If all of this be true, the occasion was clearly privileged.

It is equally clear that the record is bare of any substantial evidence to indicate that the privilege was abused.

Had the court instructed the jury unequivocally that the occasion was privileged, this would have been to ignore the evidence introduced for the plaintiff that the visit to Nottoway was part of a collusive and malicious effort to injure him and defeat him for the nomination which he sought. On the other hand, if the court had instructed the jury that the occasion was not privileged, this would have been to ignore the evidence introduced for the defendant. There being such sharp conflicts in the testimony, we know of no better way to determine the question raised than to submit it to a jury under proper instructions.

This question of fact was fairly submitted to the jury under instructions which, if not strictly accurate in every particular, were sufficient to apprise the jury of their function and duty. Their verdict in favor of the defendant can only be construed to mean that they credited the evidence submitted for the defendant and discredited that submitted for the plaintiff. This question of fact being determined by the verdict of the jury in favor of the defendant, the legal conclusion that the occasion was privileged follows.

If the contention that notwithstanding this conflict the judge should have instructed the jury, without

qualification, either that the occasion was or was not privileged were sustained, the same result would follow, because if the trial judge should have decided that conflict in the testimony, the weight of the evidence supports the view that the occasion was privileged, and had the jury been so instructed there could have been but one proper verdict and that for the defendant, because of the absence of evidence that there was any express malice or that the occasion was abused.

The defendant went to Nottoway county, then, for the purpose of determining whether or not the letter, or any part of it, had been forged; and, as we have stated, it follows that the occasion was privileged. He certainly had a right to defend himself against that charge. The evidence shows that the letter was exhibited to no other person except the three who have been named, and as the testimony fails to show that there was any abuse of the privilege, there should be no damages. True it is that there is evidence imputing malicious motives to the defendant and tending to show that the defendant and Barrow went to Nottoway county for the purpose of securing the aid and sympathy of the relatives of Mrs. Chappell for the circulation of the libel and the prosecution of Dr. Bragg, and so to embarrass him in his campaign, and ultimately to defeat him for the office which he was seeking. It cannot, however, be said that the weight of the testimony supports any of these imputations. If it could be fairly held that there is a conflict in the testimony, that also was for the jury and their determination of it is conclusive here.

The case was a difficult one to try. The able attorneys might have made it easier for the trial judge if they had co-operated for the purpose of excluding all extraneous matter, and we do not mean to say that

every ruling of the trial court was either correct or consistent. We do mean to say that there is no harmful error, and that the only issues in the case are, (1) whether or not the occasion was privileged, and (2) whether the privilege was abused. That it was privileged, the evidence introduced for the defendant demonstrates. This being settled—that is, the fact upon which the legal question depended—by the verdict of the jury, then there is nothing left upon which any substantial verdict for the plaintiff could be justified, because of the absence of evidence to support the contention that the privilege was abused. There is no suggestion in the record that the defendant ever mentioned the subject to any one after his interview with the three persons so frequently referred to in Nottoway county. While the evidence shows that the plaintiff, Bragg, is innocent of the imputations which Mrs. Chappell's letter cast upon him, it also supports the finding of the jury that he has suffered no damage for which he is entitled to recover from the publication of the letter in Nottoway county, and it is of this of which he is here complaining.

We find no sufficient reason for reversing the judgment.

*Affirmed.*