## Richmond

### HENRY G. LUHRING AND LUHRING MOTOR COMPANY, INC. v. W. R. CARTER, JR.

March 10, 1952.

Record No. 3842.

Present, All the Justices.

The opinion states the case.

*Breeden & Hoffman,* for the plaintiffs in error.

*Leigh D. Williams* and *Lawson Worrell, Jr.,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

On December 8, 1949, W. R. Carter, Jr., instituted an action for damages against Henry G. Luhring and Luhring Motor Company, Inc., under section 8-630, Code of Virginia, 1950, (Virginia Code, 1942, (Michie), sec. 5781) commonly called the statute of insulting words, or the anti-duelling act. The motion for judgment was returnable to and docketed on December 30, 1949. No other proceedings were had in the cause before the Rules of Court of February 1, 1950, became effective. The trial, held on June 6th and 7th, 1950, resulted in a verdict and judgment for $15,000 in favor of Carter, hereinafter called plaintiff, against both Luhring and the company, who will be referred to as defendants.

The usual allegation of intent to injure plaintiff in his "good

name, fame and credit and to bring'' him into public disgrace was made in the motion for judgment. Then the allegedly false and insulting words claimed to have been spoken in the presence of Julian H. Payne and others on the 16th day of December, 1948, by Henry G. Luhring of and concerning plaintiff and the allegations as to damages are set out as follows:

" 'I am not going to do any more business with the bank as long as they use that damn drunk * * * to handle their adjustments. Carter * * * is taking money from other garages in exchange for giving them his insurance companies' repair work. He * * * is a drunken son of a bitch. I am going to drive Carter * * * out of business.'

"WHEREFORE, by reason of the foregoing, the undersigned will move the Court for judgment against you at the hands of the said Court, and at the time and place and in the amount hereinabove set forth."

On February 13, 1950, on motions of defendants and plaintiff respectively, the court ordered that bill of particulars and grounds of defense be filed, but no time limit was fixed for compliance.

On May 18, 1950, plaintiff filed his bill of particulars, the third and fourth paragraphs of which follow:

"3) That the slanderous and defamatory statements made by the defendants, as set forth in the notice of motion for judgment, were made with the purpose, desire, and demand that they be repeated, especially to clients or customers of the plaintiff, in order to destroy the plaintiff's business as an insurance claims adjuster; that pursuant to the purpose, desire, and demand of the defendants the said slanderous and defamatory statements were so repeated to customers or clients of the plaintiff, resulting in considerable loss of business and, consequently, a considerable loss of money which the plaintiff otherwise would have earned.

"4) That as a direct and proximate result of the slanderous and defamatory statements, the plaintiff was refused further employment as an insurance claims adjuster by Markel Service, Inc., and American Fidelity Fire Insurance Company, and thereby the plaintiff lost large sums of money which he otherwise would have earned."

Defendants filed no plea or grounds of defense before June 6, 1950, but on that date, the morning of trial, they filed what the order termed a special plea. It reads:

"The defendants, as further plea to the notice of motion for judgment filed against them in the above-styled case, and in compliance with section 8-631 of the Code of Virginia, 1950, while denying that the statements alleged in the notice of motion for judgment were made in the words and manner and with malice for the purposes alleged, nevertheless further allege, by way of defense, that it is true that on or about the 17th day of December, 1948, Henry G. Luhring stated, in the presence of Litt H. Zehmer, Julian H. Payne, M. A. Steinbaugh and Henry G. Luhring, Jr., that he was not willing to have plaintiff act as adjuster on any claims arising out of the financing of automobiles sold by Luhring Motor Company, Inc., with the Bank of Virginia, and assigned as his reason therefor, that Carter had declined to let Luhring Motor Company, Inc., repair said Julian H. Payne's truck even though its bid for good and sufficient repairs was lower than the bid of Harris Motors, Inc., to whom the repair job had been awarded by the plaintiff. Defendants further allege that said remarks were not accompanied by profanity, malice or threats against said plaintiff in any manner whatsoever and were privileged in their nature, being communicated only to persons to whom defendants owed a legal, moral or social duty to reveal the facts as stated."

On that same day defendants also moved the court to strike paragraphs 3 and 4 of the bill of particulars, and the plaintiff moved that the Special Plea be rejected. Both motions were overruled, and the jury was sworn to "try the issue joined," and it appears that the trial was then proceeded with as if the special plea was one of general issue.

Upon conclusion of plaintiff's proof on the afternoon of June 6, 1950, defendants moved to strike the evidence, which motion was overruled. Thereupon defendants moved that they be allowed to file a plea of general issue and grounds of defense, which, over plaintiff's objection, was permitted, but the court indicated that a continuance would be granted if plaintiff had been taken by surprise.

No statement is made in the record as to whether the cause was or was not tried under the Rules of Court effective February 1, 1950. However, omission to fix, in the order of February 13, 1950, any time limit in which bill of particulars was to be filed, and allowing defendants to file plea of general issue indicates

that it was not tried under the Rules. See Rules of Court 3.7, 3.18(d), 3.5 and 3.22.

Summarized, defendants' contentions are that:

(1) The allegation as to damages made in the notice of motion was general and did not warrant admission of evidence of special damages, and that the court should have stricken paragraphs 3 and 4 of plaintiff's bill of particulars filed more than a year after the alleged tort for these paragraphs, they say, set out special damages.

(2) The court erroneously admitted evidence of repetition of the alleged slander, and wrongfully refused admission of certain evidence offered by defendant;

(3) The court erred in denying defendants the right to re-call for a second time and for further cross-examination one of plaintiff's witnesses;

(4) The court should have stricken out certain evidence concerning the value of Luhring's real estate, and

(5) The court should have held that the occasion was one of qualified privilege and submitted the issue to the jury of whether or not the privilege was abused.

The claims of the litigants require that the circumstances preceding and attending the speaking of the alleged insulting words and certain events that thereafter occurred be stated in some detail.

Henry G. Luhring is president of Luhring Motor Company, Inc., of Norfolk, Virginia, which company is engaged in the sale, and repair of automobiles and trucks. Motor vehicles that it sells are financed through the Bank of Virginia, Norfolk, Virginia, of which institution L. H. Zehmer is vice-president. Upon the cars so financed, the Bank of Virginia takes out or requires to be taken out insurance policies to protect it in case of damage to the vehicles. These policies, taken out with one or more insurance companies, are, in case of damage to the cars, serviced by the Markel Service, Inc., an insurance adjusting agency, of Richmond, Virginia.

Plaintiff, a resident of Norfolk, Virginia, is an insurance claims adjuster engaged in investigation and settlement of claims arising from automobile collisions in the Norfolk area. He had for some years prior to December 16, 1948, been employed from time to time and rather regularly by Markel Serv-

ice, Inc., to adjust claims in that area, and the compensation paid him for such services was considerable.

In the summer of 1948 a truck of Julian H. Payne that was financed by the Bank of Virginia was damaged and plaintiff undertook to adjust the claim. Estimates on the cost of repairs were obtained from Luhring Motor Company, and from Harris Motors, Inc., and though that submitted by defendant company was about $20 less than that of the other bidder, on the advice of plaintiff, Payne had the repairs done by Harris Motors, Inc.

On December 16, 1948, Payne's automobile was involved in a collision, and he had it towed to Luhring Motor Company, with a view to having it there repaired. On that morning, Payne talked to M. A. Steinbaugh, sales manager and director of service of Luhring Motor Company and with Henry G. Luhring about the purchase of a new car and repairs on the old car. In that conversation Luhring was told by Payne that though the bid of Harris Motors, Inc., to repair the truck had been about $20 higher than his, the job had been awarded to the former company, on Carter's direction, and he (Luhring) appeared displeased at what Carter had done. Luhring thereupon requested Zehmer to come to the Luhring Motor Company, and upon his arrival Payne was invited into the office. In the presence of Henry G. Luhring, Jr., (vice-president of defendant company), M. A. Steinbaugh and Zehmer, he was asked by defendant Luhring to state what he had previously said about having taken his truck to Harris Motors, Inc., for repair at Carter's direction, which statement he repeated. It was then, according to Payne, that Luhring made the statements set out in the motion for judgment.

Kirk O. Ball, a claims examiner of Markel Service, Inc., who was in charge of the Bank of Virginia's business with that agency and who supervised adjustments made by Carter, testified, over defendant's objection, that on January 8, 1949, he received a phone call from Zehmer. He said that Zehmer informed him of his conference with Luhring about Carter, and in the conversation told him "that Carter was an alcoholic" and had been "taking kickbacks from automobile dealers." "Kickbacks" were proved to represent over-charges by a repair shop for work, which overcharge is divided or split between the shop and the adjuster.

Following this conversation, certain correspondence passed

between Ball and Zehmer, and Carter thereafter received no further business from Markel Service, Inc.

Plaintiff testified that he recommended that Harris Motors, Inc., be given the repair work on Payne's truck because it was making certain repairs that Payne was entitled to that were not covered by defendants' estimate. He further said that in the summer of 1948, when he went to the Luhring Motor Company about repairs on the truck and indicated that the bid of Harris Motors, Inc., would be accepted, defendant Luhring "was considerably irritated." When he visited Luhring Motor Company on the morning of December 17, 1948, relative to estimate on the Payne car, he says that after some discussion Luhring ordered him out by saying, "Well, I don't have to stand here and argue with you. There is the door. Get out."

Defendants earnestly insist that as the allegation of damages in the notice of motion was general, it did not justify proof of special damages. *Rosenberg & Sons* v. *Craft,* 182 Va. 512, 29 S. E. (2d) 375, 151 A.L.R. 1095. They then assert that the refusal to strike paragraphs 3 and 4 of the particulars, (which they say set up special damages) had the effect of allowing plaintiff to amend his notice by a bill of particulars after the statute of limitations had run, and prove repetition of the slander by Zehmer which had not been requested by Luhring, and thus prove special damages, *i.e.,* loss of business from Markel Service, Inc.

Plaintiff takes the position that the circumstances under which the words were spoken, the person to whom addressed, and the language itself, *i.e.,* "I'm going to run Carter out of business," disclose the speaker's purpose and intent. He says its repetition by Zehmer to Ball of the Markel Service, Inc., and plaintiff's resultant loss of business were not only the natural and probable consequences of what was said, but Luhring's actual and declared purpose, and thus the bill of particulars sets out no new cause of action but merely recites in detail the damages alleged, purposely intended by defendants and suffered by plaintiff.

We are reminded that this action was docketed on December 30, 1949, before the Rules of Court of February 1, 1950, became operative, and it is asserted that the bill of particulars should not be treated as an amendment to the notice of motion for judgment.[1] *Irvine* v. *Barrett,* 119 Va. 587, 89 S. E. 904, Ann. Cas.

---

[1] Rule 3.18(a) of Rules of Court effective February 1, 1950, made a bill of particulars a pleading.

1917C, 62; *Columbia Acci. Ass'n* v. *Rockey,* 93 Va. 678, 25 S. E. 1009; *Chesapeake, etc., R. Co.* v. *Stock & Sons,* 104 Va. 97, 51 S. E. 161; *Emery* v. *Monongahela West Penn Public Service Co.,* 111 W. Va. 699, 163 S. E. 620; *In re Caldwell's Will,* 186 Misc. Rep. 60, 58 N. Y. S. (2d) 133. And it is said that if the bill of particulars which charges repetition of the insulting words be treated as an amendment to the notice, then plaintiff has set up a new, distinct and other cause of action (tort) committed January 8, 1949, not by defendants but by Zehmer (53 C.J.S., Libel and Slander, secs. 83 and 84, p. 136) and a tort that was actually barred by the statute of limitations before the bill of particulars was filed.

Though it is generally held that the republication of a *libel* is a circumstance or item of damage provable against the original author, there is conflict of authority upon the question of whether repetition of a *slander* by a third party is admissible against the original tort feasor as an item of damages. The view that republication of *libel* is admissible against the original author but repetition of slander is not, is stated thus by the following authority:

"The actual publisher of a libel may be an innocent porter or messenger—a mere hand, unconscious of the nature of his act, and for which, therefore, his employers shall be held liable, and not he. Whereas in every case of republication of a slander the publisher acts consciously and voluntarily; the repetition is his act. Therefore, if a person is in any way concerned in making or publishing of a libel, he is liable for all the damage that ensues from its publication. But if one person slander another he is only liable for such damage as results directly from the one utterance of his own lips. If a third person hears him and chooses to repeat the tale, that is his own act, and he alone is answerable should damage ensue. In an action against the first person such special damage would be too remote. For such publication of a slander is a distinct and separate act, and every person repeating it becomes an independent slanderer, and he alone is answerable for the consequences of his own unlawful act. See Odgers on *Libel & Slander,* (5th Ed.) 177." Newell, *Slander and Libel,* (4th Ed.) sec. 302, at p. 338. Of similar import is *Maytag* v. *Cummins,* 260 F. 74, 77, 16 A.L.R. 712.

In cases of slander (spoken words), though a distinction is often made between words that are actionable *per se* and those

actionable because of extrinsic facts, there is authority to the effect that when a repetition is authorized and is the direct and natural result of the original slander, it may be shown in evidence against the original defamer, and this is especially true where it was intended and contemplated that the slander be repeated. 53 C.J.S., Libel and Slander, sec. 85, p. 137; 33 Am. Jur., Libel and Slander, sec. 197, p. 186.

Here the occasion and the words used clearly disclose that their repetition by Zehmer was not only the natural and probable result but was contemplated and intended to drive Carter out of business. Though the repetition was verbal, it was nevertheless an intended circumstance in a contemplated sequence of events and thus not mere hearsay but an item or element of damage that was a natural, direct and probable result of the original wrong.

We therefore conclude that the bill of particulars did not state a new and distinct cause of action against defendants nor was it an amendment to the original notice of motion. It only particularized, specified, and pointed out the intended and accomplished result of the original statements and the damages directly caused thereby. *Federal Land Bank of Baltimore* v. *Birchfield*, 173 Va. 200, 3 S. E. (2d) 405.

For the purpose of impeaching Julian H. Payne, plaintiff's chief witness, Robert T. Anderson, was called by defendants and asked if he had at Luhring's request visited and talked with Payne. Upon his affirmative reply, he was asked:

"Q. Will you tell what occurred on the occasion of your visit?"

This question was objected to because when Payne had testified he had not been asked if he had talked with Anderson, nor was he when cross-examined apprized of the time, place and contents of any alleged contradictory statement that he had made to Anderson from that to which he had testified. In short, the objection was that no sufficient foundation had been laid to contradict Payne by a prior inconsistent statement. The objection was sustained and thereupon defendants asked leave to recall Payne for further cross-examination, which request was granted. Payne was then told that Anderson would be called to contradict him, asked if he cared "to change his testimony in any way" and if he had not testified as follows: "That Mr. Luhring said as long 'as that damn drunken son of a bitch' was doing the adjusting, the Luhring Motor Company was not going to do any business

with the bank." Payne in answer said that such was his testimony and he did not wish to change it. He was not, however, advised of any allegedly contradictory statement or the time and place any was made to Anderson, which Anderson would be called to testify to, and when counsel for the defendants were reminded by the court of that omission, they replied, "No, we haven't asked him that. I don't think we have to ask him that, your Honor. We put him on notice that we are prepared to contradict him. We are going to rest on that."

Anderson was then recalled and again asked if he had at Luhring's request talked with Payne. Upon affirmative reply, he was asked, "Will you relate what conversation took place,—what Payne said while you were in his presence with relation to anything that Mr. Luhring is supposed to have said and done?" That question was again objected to because sufficient foundation has not been laid to contradict Payne by merely asking him if he "cared to change his testimony in any way." The objection was sustained and the court ruled that before undertaking to contradict Payne, it was necessary first to advise him of the time and place and contents of his alleged contradictory statement. *Adams* v. *Ristine,* 138 Va. 273, 122 S. E. 126, 31 A.L.R. 1413; *Gaines* v. *Campbell,* 159 Va. 504, 166 S. E. 704; *Thornton* v. *Downes,* 177 Va. 451, 14 S. E. (2d) 345; 58 Am. Jur., Witnesses, secs. 767 and 779, pp. 417 and 427.

Thereupon defendants sought to again recall Payne for further cross-examination, but the court ruled that as two opportunities to cross-examine had been afforded and no proper foundation laid for contradiction, if recalled, he must be treated as defendants' witness. Not being afforded a third opportunity to cross-examine the witness, defendants declined to recall him as their witness and assigned the court's ruling as error.

Two opportunities to lay the foundation to impeach the witness had been afforded defendants, yet they definitely declined to state time, place or the contents of the allegedly contradictory statement claimed to have been made by Payne.

The facts appearing in the record do not show that the latitude of discretion allowed the trial court concerning the recall of witnesses was abused. *Burke* v. *Shaver,* 92 Va. 345, 23 S. E. 749; *Fant* v. *Miller,* 17 Gratt. (58 Va.) 187; *Brooks* v. *Wilcox,* 11 Gratt. (52 Va.) 411; *Savage* v. *Bowen,* 103 Va. 540, 49 S. E. 668; *Jacob* v. *Warthen,* 115 Va. 571, 80 S. E. 113.

During the trial a written statement (Exhibit No. 4) showing the assessed value of real estate owned by defendant Luhring was introduced in evidence by plaintiff but it became evident that the valuation was erroneous. It was therefore agreed by counsel that the valuations appearing in the exhibit should be stricken out by the court, and the correct valuations stated at some later stage of the trial. However, counsel for all litigants overlooked making this correction and failed to have the court strike the erroneous valuations from the evidence. After conclusion of all testimony and during argument counsel for plaintiff told the jury the exhibit was erroneous and to disregard "any testimony with regard to the value of the property." No other steps were taken by plaintiff or defendants to correct the matter. Yet after verdict, defendants assigned as error the failure of the court and the omission of counsel for plaintiff to have the court strike out the improper evidence.

■ When explanation of this error was made and the jury told to disregard "any testimony with regard to the value of the property" defendants awaited the verdict of the jury. Their objection after verdict was not timely, and we find no merit in the contention that there is reversible error because the court did not formally strike out the improper evidence. If not satisfied with the explanation stated in argument, request should have been then made to the court to instruct the jury to disregard the valuations in Exhibit No. 4. No such request having been made, the objection and exception after verdict are too late. *Chesapeake, etc., R. Co.* v. *Folkes*, 179 Va. 60, 18 S. E. (2d) 309.

The defendants asked for and obtained Instruction D-4, which is:

"The court further instructs the jury that the very basis of this action is the *statements* alleged to have been made by Luhring to the effect that the plaintiff was a 'damned drunken son of a bitch', and that the plaintiff 'was taking money from other dealers in order to give them business.' Unless you believe by a preponderance of the evidence that such *statements substantially similar thereto* were made by Luhring, you shall find in favor of the defendants." Emphasis added.

The court having told the jury that the quoted *statements* were the basis of the action and that it must find for the defendants unless it believed that "such statements (or) substantially similar thereto were made by Luhring", their verdict

(especially in the substantial sum awarded) conclusively discloses that it found that both offensive statements were made.

Defendants also asked for Instruction D-2 which was refused. It reads:

"The Court instructs the jury that a communication, verbal or otherwise, made in good faith on a subject matter in which the person communicating the same has an interest, or owes a duty, legal, moral or social, is privileged if made to a person having a corresponding interest or duty.

"The Court further instructs the jury that the statements alleged to have been made by defendant, Luhring, were made only to persons to whom the defendants owed a legal, moral or social duty to make such statements and hence such statements as you may believe were made by Luhring were privileged and are not actionable, unless you further believe by a preponderance of the evidence that the defendants abused such privilege, and if you find that such privilege was not so abused, you should find for the defendants.

"It is therefore necessary for the plaintiff to show that the words were spoken by the defendant, Luhring, with malice in fact, actual malice, existing at the time the words were spoken; that is, spoken with such gross indifference and recklessness as to amount to a wanton and wilful disregard of the rights of the plaintiff. There is a presumption that the words alleged to have been spoken were spoken in good faith and the burden is upon the plaintiff to prove to the contrary by a preponderance of the evidence."

Plaintiff asserts that its refusal was proper, because he says:

(1) The occasion was not one of qualified privilege, for Payne in whose presence the statements were made was not interested in the matter discussed by Luhring with Zehmer, and

(2) If it were a privileged occasion as to all parties present, nevertheless the language used, i.e., "Carter is a drunken son of a bitch" was so disproportionate, irrelevant and foreign to the occasion and matter under consideration as to be wholly beyond and outside of the qualified privilege and its protection, and was such a conclusive abuse of the claimed privilege as to leave no issue of fact to submit to the jury as to whether there was or was not an abuse. It is then stated that the finding of the jury under Instruction D-4 conclusively shows that the offensive statement quoted immediately above was used.

Determination of whether or not the occasion is one of qualified privilege is ordinarily a matter to be decided by the court. *Bragg* v. *Elmore,* 152 Va. 312, 147 S. E. 275; *Farley* v. *Thalhimer,* 103 Va. 504, 49 S. E. 644; *Tyree* v. *Harrison,* 100 Va. 540, 42 S. E. 295.

Yet if the evidence upon which the asserted privilege is based is in substantial conflict, whether or not the occasion is one of privilege becomes a mixed question of law and fact to be determined by the jury under appropriate instructions from the court. *Bragg* v. *Elmore, supra.*

In our opinion all parties present were interested in the matter at hand and under discussion. The manner in which Carter had adjusted the damage of Payne's truck on the former occasion and who should repair the car and who do the adjusting of that damage and the adjusting on other cars in the future that were similarly financed and insured were all parts and parcels of the over-all matter under discussion. This, we think, fully establishes that the occasion was one of conditional privilege.

We have not been cited to nor have we found any Virginia decision holding that where the occasion was one of conditional privilege the defamatory language used was so disproportionate, irrelevant and extraneous to the occasion as to be deemed and held to be outside the protection of the privilege as a matter of law, and that the court, for that reason, should take from the jury the issue of whether or not the privilege was abused.

There are, however, decisions to the effect that, though the occasion be qualifiedly privileged, if the language used be clearly disproportionate, extraneous and impertinent to the occasion and subject at hand, and thus beyond the scope and protection of the privilege, then there is no factual issue on the abuse of privilege to submit to the jury. *Byrne* v. *Funk,* 38 Wash. 506, 80 P. 772; *Swearingen* v. *Parkersburg Sentinel Co.,* 125 W. Va. 731, 26 S. E. (2d) 209; *Stewart* v. *Riley,* 114 W. Va. 578, 172 S. E. 791; *Parker* v. *Appalachian Elec., etc., Co.,* 126 W. Va. 666, 30 S. E. (2d) 1; *Mullens* v. *Davidson* (W. Va. 1949), 57 S. E. (2d) 1, 13 A. L. R. (2d) 887; 26 A. L. R. 844; 12 Michie's Jurisprudence, Libel and Slander, sec. 23, p. 73; 33 Am. Jur., Libel and Slander, sec. 296, p. 281; 53 C.J.S., Libel and Slander, sec. 228, p. 347; 3 Restatement of Torts, sec. 619(b).

However, whether or not the factual issue of abuse of privilege should or should not have been submitted to the jury is

not necessary to be here decided. But whether Instruction D-2 was properly refused is the specific question before us.

The second paragraph of the instruction is confusing, contradictory and erroneous. It affirmatively tells the jury that "the statements alleged to have been made" were made only to persons to whom "Luhring owed a duty" to "*make such statements*", and they were thus privileged and not actionable. It then undertakes to qualify that erroneous language by telling the jury in a negative way that if plaintiff proves an abuse of the privilege by a preponderance of the evidence, then defendants lose its protection.

In the first instance, it undertakes to give the court's stamp of approval to the insulting phrases by saying Luhring owed a duty to make *such* observations. That should not have been done. Making it still more objectionable is the fact that approval is accorded the allegedly insulting words without the qualifying statement that the language must have been spoken in good faith to be privileged.

On the facts of this case, if it were proper to submit to the jury the issue of whether or not the privilege had been abused (which we do not decide), nevertheless the instruction should not in any manner have approved and assumed that *such* statements, *i.e.*, the specific statements complained of, were within the privilege, but the objectionable paragraph should have been phrased substantially as follows:

"The court further tells you that as all of the persons present on the occasion in question were interested in or had a legal or moral duty in the matter at hand, Henry J. Luhring, personally and on behalf of his corporation, had the right and owed to those present the duty in good faith to make any statement or statements that were pertinent, informative of or relevant to the matter and subject under discussion and consideration, and unless you believe from a preponderance of the evidence, that he abused that privilege, you should find for the defendants."

██ As the paragraph in question was involved, contradictory and erroneous, and thus calculated to confuse and mislead the jury, the instruction was properly refused.

Our conclusions render it unnecessary that certain assignments of cross-error made by plaintiff be considered.

The judgment is affirmed.

*Affirmed.*